Bob Lewis SMITH, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–05–00819–CR.

Court of Appeals of Texas, Houston (1st Dist.).

March 22, 2007.

Discretionary Review Refused Sept. 12, 2007.

James M. Leitner, Houston, for Appellant.

Charles A. Rosenthal, Jr., Dist. Atty.– Harris County, Dan McCrory, Asst. Dist. Atty., Houston, for the State of Texas.

Panel consists of Justices TAFT, KEYES, and HANKS.

## OPINION

EVELYN V. KEYES, Justice.

A jury convicted appellant, Bob Lewis Smith, of burglary of a habitation,[1] the underlying felony being that he committed or attempted to commit indecency with a child.[2] After finding two enhancement paragraphs true, the trial court sentenced appellant to life imprisonment. In nine points of error, appellant contends that (1) the trial court erred when it refused to suppress his videotaped oral statement to police; (2) the trial court improperly suppressed evidence of the complainant's probationary status; (3) the trial court erred

---

**1.** *See* TEX. PEN.CODE ANN. § 30.02(a)(3) (Vernon 2003).

**2.** *See id.* § 21.11 (Vernon 2003).

when it refused to allow appellant to cross-examine the interrogating officer about appellant's invocation of his right to end the interview; (4) the trial court erred when it allowed hearsay testimony about fingerprint evidence; and (5) the evidence is legally insufficient to support appellant's conviction for burglary of a habitation.

We affirm.

### Facts

On the morning of August 3, 2004, the 13–year–old complainant, E.C., was home alone and in bed sleeping. At one point, she woke up and heard noises that sounded as if someone were throwing things. She was unconcerned, however, because she assumed that her brother was the source of the noise. She got out of bed, stepped into the hall, and headed for the bathroom, but stopped when she saw a man she had never seen before holding her father's handgun. Scared that he might hurt her, she got down on her knees. After confirming that no one else was in the house, appellant grabbed her by the shoulder, pulled her up, put the gun to her head, and took her back to her bedroom to search for money and jewelry. When he found none, he forced her to accompany him on a search of the house. On several occasions he held the gun to her head, at one point pulling the slide back, causing E.C. to believe that he was about to kill her.

While in the bathroom, appellant ordered E.C. to take her shirt off. As he pointed the gun at her, appellant touched her breast over her training bra, and then told her to put her shirt back on. He then took her back to her bedroom, and she sat on her bed. Again pointing the gun at her, he unbuttoned and pulled down her pants. She covered herself with a blanket, but he pulled it away and touched her private parts over her panties. She moved away, but he got on the bed, opened her legs, climbed on top of her, and started moving up and down. She managed to roll out from under him and go to the window. After a brief exchange, she lay down on her bed, and he covered her with a blanket and left.

Police arrived shortly afterwards and lifted prints from various locations in the house. Police later identified a print found on the frame of a bathroom window screen as appellant's.

Less than a week after the burglary, E.C. met with a forensic sketch artist, who created a composite sketch of the man who had assaulted her. After seeing this picture, Officer R. Razo, who had been assigned to the case, identified appellant as a possible suspect. Officer Razo included appellant's picture in a photo spread and showed it to E.C. Initially, E.C. did not recognize any of the men as the man who had assaulted her, but when asked if any of the men in the photo spread had any of the same characteristics as the man who had assaulted her, she pointed at the picture of appellant, saying that he had the same cheeks. Later, E.C. was shown a live line-up. Again, she initially was unable to identify the man who had assaulted her, but then said, "Yes, No. 4 [appellant] looks like him."

After the live line-up, appellant was taken to a video room for interrogation by Officers Razo and J. Anderson. Officer Anderson read him his rights, including his right to terminate the interview at any time. Appellant stated that he understood these rights and agreed to waive them and speak to the officers. At one point, appellant said, "Man. Whatever's gonna happen, cause I'm just ready to go up there and eat." A few minutes later he said, "Could I go upstairs because I'm hungry?" Appellant was provided with chips and soda, and the interrogation continued.

Appellant admitted to entering E.C.'s home, but denied touching her.

Before trial, appellant filed a motion to suppress the videotaped statement, arguing that it was involuntary and made without the presence of an attorney when he had not waived his right to counsel, that he was not immediately taken before a magistrate and given his warnings, and that he was not given a legally sufficient warning of his rights by the police officer to whom he made his statement. At the suppression hearing, appellant argued that his confession was inadmissible only because his requests to terminate the interview were not honored. The trial court denied his motion to suppress, but did order the State to redact certain parts of the videotape. At trial, because the State did not offer into evidence the portion of the videotape where appellant made the statements that he was ready to eat and that he was hungry, appellant argued that he was entitled to introduce these statements through Officer Razo and to cross-examine Officer Razo about them because they indicated that appellant had attempted to terminate the interrogation. The court ruled that the evidence was inadmissible as hearsay.

At trial, E.C. was not asked to identify appellant as the man who had assaulted her. She provided detailed testimony about the assault, however, and testified that the man was wearing a silver necklace in the shape of the State of Texas, which appellant was wearing when he was arrested. Over appellant's objections, Officer D. Horace and Medina Carter Bufford, a registered nurse at the Children's Assessment Center who examined E.C., also gave detailed descriptions of the assault based on what E.C. had told them.

Before defense counsel cross-examined E.C., the trial court held a hearing outside the presence of the jury on whether to allow impeachment evidence of E.C.'s deferred-adjudication probation. The testimony showed that on October 1, 2004, after appellant assaulted her but before his case went to trial, E.C. was arrested and placed on deferred-adjudication probation for a felony drug offense. Upon questioning by defense counsel, she testified that, since her arrest, there had been no discussion about her being a witness in appellant's case: the prosecutor in appellant's case had not discussed E.C.'s case with E.C., E.C.'s probation officer had not spoken with her about her testimony at appellant's trial, and the fact that she was on probation would have no effect on her testimony. After hearing E.C.'s testimony, the trial court ruled that it would not allow her to be impeached with her deferred adjudication, concluding that "the prejudicial effect … far outweighs the probative value of that inquiry."

At trial, Officer D. Benningfield, a latent print [3] examiner with the Houston Police Department, testified that of the 12 partial prints that had been lifted from E.C.'s house, only one, a palm print, was sufficient for comparison, and it did not belong to appellant. The other 11 prints were, in her opinion, not sufficient for comparison. These prints, therefore, were not compared to appellant's prints. Upon defense counsel's request, the court ordered Officer Benningfield to compare these 11 remaining prints to appellant's prints. After making the comparisons, Officer Benningfield was unable to attribute them to appellant or to determine that they did not belong to him—i.e., they were "unusable." She testified, however, that she had asked other examiners to look at a particular print that had been lifted from the metal

**3.** A latent print is an unintentional print left behind at a crime scene.

frame of a window screen at E.C.'s house. Over appellant's objection, Officer Benningfield testified that two officers—Officers Stairhime and Saldivar—had reached a conclusion about the print and that their conclusions were the same.

The State later called Officer Stairhime to testify.[4] He explained that, in his opinion, the latent print from the window screen, which Officer Benningfield had deemed unusable, did belong to appellant. Upon continued questioning by the State, Officer Stairhime testified, over appellant's objection, that in order for him to testify in court to a positive identification, he needed to have at least one more examiner come to the same conclusion.

### Motion to Suppress

In his first and second points of error, appellant complains that the trial court erred when it denied his motion to suppress his videotaped confession. More specifically, appellant argues that the confession was inadmissible because (1) the police continued to interrogate him after he invoked his right to end the interview and (2) his confession was coerced.

■ A trial court's ruling on a motion to suppress lies within the discretion of the court. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996). As the sole trier of fact during a suppression hearing, the trial court may choose to believe or disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App.2000). A trial court abuses its discretion if it refuses to suppress evidence that is obtained in violation of the law and that is, therefore, inadmissible. *Erdman v. State*, 861 S.W.2d 890, 893 (Tex.Crim.App.1993).

■ In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000). Although we give almost total deference to the trial court's determination of historical facts, we conduct a de novo review of the trial court's application of the law to those facts. *Id.* We examine the evidence in the light most favorable to the trial court's ruling. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim.App.1999).

### Invocation of Right to Terminate Interrogation

■ In his second point of error, appellant contends that his confession was illegally obtained in violation of *Miranda v. Arizona*,[5] because his requests to terminate the interrogation were not honored. Specifically, he argues that he told police, "I just want to end this and get something to eat because I'm hungry," and, "I'm going to stop this and go upstairs and get something to eat"; that these statements clearly invoked his Fifth Amendment right to remain silent; and that Officer Anderson's continued questioning violated his rights under the United States Constitution. The State responds that appellant did not say "I just want to end this and get something to eat because I'm hungry," or, "I'm going to stop this and go upstairs and get something to eat," but rather, "Man. Whatever's gonna happen, cause I'm just ready to go up there and eat," and, "Could I go upstairs because I'm hungry?" These statements, according to the State, are not unambiguous invocations of his right to terminate the interview and, therefore, his confession was voluntary, and the motion to suppress was properly denied.

---

4. Officer Saldivar did not testify at trial.

5. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The right to terminate custodial questioning by police is among the procedural safeguards established by *Miranda.* 384 U.S. 436, 473–74, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966); *Watson v. State,* 762 S.W.2d 591, 596 (Tex.Crim.App.1988); *Cooper v. State,* 961 S.W.2d 222, 225 (Tex. App.-Houston [1st Dist.] 1997, pet. ref'd). If an accused "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda,* 384 U.S. at 473–74, 86 S.Ct. at 1627; *see also Watson,* 762 S.W.2d at 596; *Cooper,* 961 S.W.2d at 225. The invocation of the right need not be formal; anything said or done by the accused that could reasonably be interpreted as a desire to invoke that right is sufficient to cut off questioning. *Cooper,* 961 S.W.2d at 225 (citing *Watson,* 762 S.W.2d at 598).

If the police fail to end custodial questioning after the accused has invoked his right to remain silent, any subsequently obtained statements are inadmissible. *Dowthitt v. State,* 931 S.W.2d 244, 257 (Tex.Crim.App.1996) (citing *Michigan v. Mosley,* 423 U.S. 96, 100–04, 96 S.Ct. 321, 325–26, 46 L.Ed.2d 313 (1975)). Police may not continue questioning an accused in an attempt to persuade him to change his mind and talk. *Id.* However, police are not required to stop the questioning when the accused's invocation is ambiguous. *Id.* Nor are police required to clarify ambiguous remarks before continuing the interrogation.[6] *Id.*

Here, after a careful review of the videotaped statement, we agree with the State

that appellant did not say, "I just want to end this and get something to eat because I'm hungry," or, "I'm going to stop this and go upstairs and get something to eat," but rather appellant stated, "Man. Whatever's gonna happen, cause I'm just ready to go up there and eat," and, "Could I go upstairs because I'm hungry?" Neither of these statements constitutes an unambiguous invocation of his right to end the interview. The statements indicate only that appellant was hungry and wanted to eat, not that he wanted to end the interrogation. We conclude, therefore, that appellant did not unambiguously invoke his right to end the interview, and Officer Anderson did not violate appellant's rights when she continued to question him. *See Dowthitt,* 931 S.W.2d at 257. Thus, appellant's statement was not obtained in violation of the law and the trial court did not abuse its discretion when it denied his motion to suppress. *See Erdman,* 861 S.W.2d at 893.

We overrule appellant's second point of error.

### Coercion

In his first point of error, appellant argues that his videotaped confession was coerced, and therefore inadmissible, because the police (1) lied to him about what evidence had been collected; (2) threatened him with additional and more serious charges if E.C. changed her story; and (3) failed to honor his request to end the interrogation. The State counters that review of the first two bases of coercion—lies about the evidence and additional and more serious charges—is waived because the objections do not comport with any of

---

**6.** This standard is less strict than the standard for an accused's invocation of the Fifth Amendment right to counsel, when police may continue to question an accused after an unclear or ambiguous invocation of the right to counsel *only* to ascertain "whether the

accused indeed wants to consult with counsel or wishes to proceed with the interview without benefit of counsel." *Lucas v. State,* 791 S.W.2d 35, 46 (Tex.Crim.App.1989), *vacated on other grounds,* 509 U.S. 918, 113 S.Ct. 3029, 125 L.Ed.2d 717 (1993).

appellant's previous objections that he asserted in his motion to suppress, at the suppression hearing, or at trial.

■ A timely and reasonably specific objection, followed by an adverse ruling, is required to preserve error for appellate review. TEX.R.APP. P. 33.1(a). Additionally, if the argument presented on appeal is not the same as the objection raised at trial, no error is preserved and review is waived. *Butler v. State,* 872 S.W.2d 227, 236 (Tex.Crim.App.1994); *Sandoval v. State,* 52 S.W.3d 851, 855 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd).

■ Appellant filed a pretrial motion to suppress his videotaped confession, arguing that his statement to police was involuntary and made without the presence of an attorney when he had not waived his right to counsel, that he was not immediately taken before a magistrate and given his warnings, and that he was not given a legally sufficient warning of his rights by the police officer to whom he made his statement. At the suppression hearing, however, appellant argued that his confession was inadmissible only because his requests to terminate the interview were not honored as required by *Miranda* and the Texas Code of Criminal Procedure.[7] *See Miranda,* 384 U.S. at 473–74, 86 S.Ct. at 1627; TEX.CODE CRIM. PROC. ANN. art. 38.22 (Vernon 2005). Appellant did not argue either in his pretrial motion or at the hearing that the statement was inadmissible because the police had lied to him about what evidence had been collected and had threatened him with additional and more serious charges if E.C. changed her story. Appellant makes these arguments for the first time on appeal. Because he did not raise these ob-

jections with the trial court, appellant's objections are waived. *See* TEX.R.APP. P. 33.1(a). Moreover, appellant has waived review of his objection to the videotaped statement on these grounds because his appellate complaints differ from his trial objections. *See Butler,* 872 S.W.2d at 236; *Sandoval,* 52 S.W.3d at 855.

Appellant's third basis of coercion—that Officer Anderson failed to honor his request to end the interview—also fails. We have already determined under appellant's second point of error that appellant did not unambiguously invoke his right to end the interview and, therefore, Officer Anderson did not violate appellant's rights when she continued to question him. Thus, because appellant's right to end the interview was not violated, Officer Anderson could not have coerced him into giving a statement on this ground.

We overrule appellant's first point of error.

### Confrontation and Cross–Examination

■ In his third point of error, appellant argues that the trial court erred when it denied appellant the opportunity to cross-examine E.C. about her deferred-adjudication probation, in violation of his right to confrontation.

■ The constitutional right of confrontation necessarily includes the right to cross-examine the State's witnesses. *Carroll v. State,* 916 S.W.2d 494, 497 (Tex. Crim.App.1996). Because cross-examination is the "cornerstone" of the criminal trial process, a defendant "must be given wide latitude to explore a witness's story, to test the witness's perceptions and memory, and to impeach his or her credibility." *Cooper v. State,* 95 S.W.3d 488, 492 (Tex.

---

**7.** At the suppression hearing, appellant also argued, in the alternative, that, if the trial court were to deny the motion to suppress, certain portions of the videotape should be redacted.

App.-Houston [1st Dist.] 2002, pet. ref'd) (citing *Gutierrez v. State*, 764 S.W.2d 796, 799 (Tex.Crim.App.1989)). Even so, "the trial court retains wide latitude to impose reasonable limits on cross-examination based on, among other things, concerns about harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." *Id.* at 492 (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986)).

 A defendant's constitutional right of confrontation is violated when a trial court improperly limits his cross-examination of a witness. *Id.* at 492 (citing *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435; *Hurd v. State*, 725 S.W.2d 249, 252 (Tex.Crim.App.1987)). The scope of appropriate cross-examination is necessarily broad, and a defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a witness's bias, interest, or motive to testify. *Carroll*, 916 S.W.2d at 497. The Texas Court of Criminal Appeals has held that this "rule encompasses all facts and circumstances which, when tested by human experience, tend to show that a witness may shade his testimony for the purpose of helping to establish one side of the cause only." *Id.* at 497–98 (quoting *Jackson v. State*, 482 S.W.2d 864, 868 (Tex.Crim.App. 1972)) (emphasis omitted).

Appellant argues that he was entitled to impeach E.C. about the fact that, at the time of trial, she was on deferred adjudication for a felony drug offense. To support his argument, appellant relies on *Davis v. Alaska*. *See* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). In *Davis*, the State moved for a protective order to prevent the defense from exposing that a key witness for the State, Richard Green, was on juvenile probation after having been adjudicated a delinquent for burglarizing two cabins. *Id.* at 310–11, 94 S.Ct. at 1107. In opposing the protective order, defense counsel made it clear that he would cross-examine Green about his probationary status only to show that Green was helping the police at the same time he was on probation so that defense counsel could later argue that Green was acting out of fear or concern for his probation. *Id.* at 311, 94 S.Ct. at 1108. The trial court, however, granted the State's motion for a protective order. *Id.* at 311, 94 S.Ct. at 1108. On appeal, the United States Supreme Court concluded that, although it could not speculate as to whether the jury would have accepted defense counsel's argument, the jurors were entitled to hear the defense theory "so that they could make an informed judgment as to the weight to place on Green's testimony which provided 'a crucial link in the proof . . . of petitioner's act.'" *Id.* at 317, 94 S.Ct. at 1111 (quoting *Douglas v. Alabama*, 380 U.S. 415, 419, 85 S.Ct. 1074, 1077, 13 L.Ed.2d 934 (1965)).

*Davis* is distinguishable from the case at bar. In *Davis*, Green was on probation for burglary both at the time of the trial and at the time of the events about which he testified. *Id.* at 310–11, 94 S.Ct. at 1107. The defendant in *Davis* also was charged with burglary in a separate incident in which the stolen property was found near Green's home. *Id.* at 309, 94 S.Ct. at 1107. Thus, the defense argued, when Green testified for the State, he could have been doing so out of fear or concern for his probationary status: "Not only might Green have made a hasty and faulty identification of petitioner to shift suspicion away from himself . . ., but Green might have been subject to undue pressure from the police and made his identifications under fear of possible probation revocation." *Id.* at 311, 94 S.Ct. at 1108.

Here, E.C. could not have been trying to shift any suspicion away from herself because she was the victim. *See Gilmore v. State,* 871 S.W.2d 848, 851 (Tex.App.-Houston [14th Dist.] 1994, no pet.) (distinguishing *Davis* on basis that State's witness "could not have been trying to shift the suspicion away from himself because he was the victim."). Furthermore, in *Davis,* Green was crucial to the State's case: he had identified the defendant in a lineup and had testified that he had seen the defendant near the location where the stolen property was found. *See Davis,* 415 U.S. at 310, 94 S.Ct. at 1107. Thus, the accuracy and truthfulness of Green's testimony were key elements in the State's case because his testimony was a "crucial link in the proof ... of petitioner's act." *See Gilmore,* 871 S.W.2d at 851 (quoting *Davis,* 415 U.S. at 317, 94 S.Ct. at 1111). Here, E.C.'s testimony was not a crucial link in the proof of appellant's act. She was unable to definitively identify appellant before trial, and the State did not ask her to make an identification at trial; her testimony about the state-shaped necklace was her only contribution to his identification as the burglar. Appellant's video-taped statement, in which he admitted entering E.C.'s home, and appellant's print found at the scene constituted direct evidence that appellant committed the offense. Moreover, even though E.C. was the only eyewitness, her testimony about the assault was cumulative of the testimony of Nurse Bufford and Officer Horace, thus lessening the importance of E.C.'s testimony about the assault.

Finally, E.C. gave a statement about the assault to Officer Horace and Nurse Bufford immediately after the assault occurred, but before she was arrested. Thus, even if her testimony had been important to the State's case, her testimony about the assault comports with what she told Nurse Bufford and Officer Horace

*after* the assault but *before* she was arrested and placed on deferred-adjudication probation; she could have gained no advantage for herself merely by repeating that testimony. *See Hall v. State,* 663 S.W.2d 154, 158 (Tex.App.-Fort Worth 1983, no pet.) (holding that trial court did not err in refusing to allow defendant to introduce evidence of witness's pending indictment when witness's testimony regarding defendant's participation in murder was virtually identical to witness's written statement, which was sworn to on day of murder and prior to offense for which witness was indicted).

Moreover, appellant presented no evidence to show that E.C. was subject to undue pressure from the State to testify against him. *See Davis,* 415 U.S. at 311, 94 S.Ct. at 1108; *Brooks v. State,* 690 S.W.2d 61, 64 (Tex.App.-Houston [14th Dist.] 1985, no pet.). Indeed, at a hearing held outside the presence of the jury, E.C. testified that, since her arrest, there had been no discussion about her being a witness in appellant's case: the prosecutor in appellant's case had not discussed her case with her and her probation officer had not spoken with her about her testimony in appellant's case, and she testified that the fact that she was on probation would have no effect on her testimony. Thus, appellant could only have used evidence of E.C.'s deferred-adjudication probation to generally impeach her character as a truthful person, a purpose not protected under *Davis. See Davis,* 415 U.S. at 311, 94 S.Ct. at 1108; *see also Warren v. State,* 514 S.W.2d 458, 465 (Tex.Crim.App.1974), *overruled on other grounds, Reed v. State,* 744 S.W.2d 112 (Tex.Crim.App.1988).

■ For the foregoing reasons, it is not clear that *Davis* applies to appellant's case and that appellant had a right under *Davis* to impeach E.C. with evidence of

her deferred adjudication probation. Therefore, we cannot conclude that the trial court erred. Furthermore, even if *Davis* does apply, we conclude that any error arising from the trial court's refusal to allow appellant to cross-examine E.C. regarding her deferred adjudication-probation was harmless.

■ As with other constitutional errors, a violation of the Confrontation Clause is subject to harmless error analysis. *Shelby v. State,* 819 S.W.2d 544, 546 (Tex.Crim.App.1991) (citing *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438). Because a violation of the right to cross-examination under the Confrontation Clause necessarily means that the testimony was not permitted before the fact finder, the Supreme Court in *Van Arsdall* was called upon to develop a harmless error analysis for when evidence had been excluded. *Id.* at 547. The Court established a three-pronged test.

■ First, we must assume that the damaging potential of the cross-examination was fully realized. *Id.* (citing *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438). Second, with that assumption in mind, we must review the error in connection with the following factors: (1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. *Id.* (citing *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438). Finally, in light of the first two prongs, we must determine whether the error was harmless beyond a reasonable doubt. *Id.* (citing *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438; *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)).

We begin with the presumption that the precluded cross-examination would have demonstrated any possible bias or interest that E.C. may have held to testify on the State's behalf or that she believed that her testimony might be of later benefit. *See id.* (citing *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438). Next, with this assumption in mind, we review the error in connection with the five *Van Arsdall* factors.

### Importance of E.C.'s Testimony to the Prosecution's Case

E.C.'s testimony was of limited importance to the State. She was unable to definitively identify appellant before trial, and the State did not ask her to make an identification at trial; her testimony about the state-shaped necklace was her only contribution to his identification as the burglar. Rather, the State relied on appellant's videotaped statement, in which he admitted entering E.C.'s home, and appellant's print found at the scene to identify him as the burglar.

Furthermore, although she was the only eyewitness, E.C. described the assault to both Officer Horace and Nurse Bufford, who later recounted her description to the jury. Thus, E.C.'s testimony about the assault was cumulative of the testimony of Officer Horace and Nurse Bufford, thereby lessening the importance of E.C.'s testimony about the assault.

### Whether E.C.'s Testimony Was Cumulative

As we just discussed, E.C.'s testimony about the assault was cumulative of Officer Horace's and Nurse Bufford's testimony about what E.C. had told them about the assault. However, E.C. was the only witness to testify that the man who had entered her home and assaulted her was wearing a state-shaped necklace.

*Whether Other Evidence Corroborated or Contradicted E.C.'s Testimony on Material Points*

In his videotaped statement, appellant admitted entering E.C.'s home, but denied touching her.

*Whether Cross–Examination Was Otherwise Permitted*

Appellant was otherwise permitted to fully cross-examine E.C.

*The Overall Strength of the Prosecution's Case*

Several pieces of evidence linked appellant to the burglary. He admitted that he entered E.C.'s home, and his print was found at the scene. E.C. further linked appellant to the crime with her testimony that the man who had entered her home and assaulted her was wearing a state-shaped necklace, which appellant was wearing when he was arrested. Although E.C. was the only eyewitness, and she was initially unable to identify him before trial and was not asked to identify him at trial, her testimony about the assault comports with what she told Officer Horace and Nurse Bufford after the assault but before she was arrested and placed on deferred-adjudication probation. Therefore, the prosecution's case against appellant was strong.

Finally, in light of the first two prongs, we look to whether the trial court's error was harmless beyond a reasonable doubt. *Shelby,* 819 S.W.2d at 547 (citing *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438; *Chapman,* 386 U.S. at 24, 87 S.Ct. at 828). E.C.'s only contribution to the State's case was her testimony that the man who entered her home and assaulted her was wearing a state-shaped necklace, which appellant was wearing when he was arrested. The rest of her testimony—namely, that about the assault—had already been admitted into evidence through the testimony of Officer Horace and Nurse Bufford. Notably, this portion of E.C.'s testimony was consistent with what she had told Officer Horace and Nurse Bufford after the offense but almost two months before she was arrested and placed on deferred adjudication probation. Thus, given the other evidence linking appellant to the crime—his confession and print—the jury could have convicted appellant without E.C.'s testimony. We conclude, therefore, that even if the trial court erred when it precluded appellant from cross-examining E.C. about her deferred-adjudication probation, any error did not contribute to appellant's conviction beyond a reasonable doubt. *See id.* (citing *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438; *Chapman,* 386 U.S. at 24, 87 S.Ct. at 828).

We overrule appellant's third point of error.

## Jury Consideration of Voluntariness of Statement

In his fourth point of error, appellant argues that because he was entitled to "fully and fairly litigate" the voluntariness of his videotaped statement to police, the trial court erred when it denied appellant the opportunity to cross-examine Officer Razo on whether appellant had tried to terminate his interrogation when the testimony showed that the statement was not voluntary, which was an issue for the jury to decide. To support his argument, appellant cites article 38.22, section 6, of the Texas Code of Criminal Procedure, which, he argues, entitled him to have the jury consider the voluntariness of his statement to police, even though the trial court had already ruled that the statement was voluntary and, therefore, admissible. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22, § 6 (Vernon 2005); *Vanderbilt v. State,* 563 S.W.2d 590, 596–97 (Tex.Crim.App.1978).

Article 38.22, section 6, sets forth a two-step procedure for determining the voluntariness of a statement. First, the trial court must, in the absence of the jury, make an independent finding as to whether the statement was made voluntarily. TEX.CODE CRIM. PROC. ANN. art. 38.22, § 6. If the trial court finds that the statement was made voluntarily, evidence pertaining to its voluntariness may be submitted to the jury, and the court must instruct the jury that it may not consider the confession unless it believes, beyond a reasonable doubt, that the confession was voluntarily made. *Id.* A defendant is not entitled to an instruction on the voluntariness of a statement in every case, however, but only when the evidence admitted at trial raises a question as to its voluntariness. *Id.* art. 38.22, § 7 (Vernon 2005). "Raising an issue as to the voluntariness of a confession means that some evidence must be presented to the jury that the confession was not given voluntarily." *Hernandez,* 819 S.W.2d at 812.

Here, appellant argued at trial that he was entitled to cross-examine Officer Razo about statements that appellant made during his interrogation that showed that he wanted to end the questioning.[8] The court ruled, however, that this evidence was inadmissible hearsay.[9]

Under article 38.22, section 6, a defendant is entitled "to offer evidence before the jury as to the voluntariness of a confession despite the judge's earlier findings thereon to the contrary." *Vanderbilt,* 563 S.W.2d at 596–97 (quoting *Ross v. State,* 504 S.W.2d 862, 864 (Tex.Crim.App. 1974)); *see also* TEX.CODE CRIM. PROC. ANN. art. 38.22, § 6. Thus, although appellant is correct in arguing that article 38.22 authorizes him to submit evidence to the jury pertaining to the voluntariness of his statement,[10] the testimony appellant intended to elicit from Officer Razo was inadmissible hearsay,[11] and the trial court did not err in excluding its admission. *See* TEX.R. EVID. 802; *see also Davis v. State,* 970 S.W.2d 758, 760–61 (Tex.App.-Austin 1998, pet. ref'd) (holding that appellant's own statement, when offered by appellant, was self-serving and not admissible under the declaration-against-penal-interest exception to the hearsay rule).

Moreover, even if the trial court had erred, the exclusion of this evidence did not harm appellant. Article 38.22 is a procedural evidentiary rule rather than a substantive one. *Davidson v. State,* 25 S.W.3d 183, 186 n. 4 (Tex.Crim. App.2000). Thus, we apply Rule 44.2(b) of the Texas Rules of Appellate Procedure and will disregard any error if the error does not affect appellant's substantial rights. *See* TEX.R.APP. P. 44.2(b); *Davidson,* 42 S.W.3d at 167. A substantial right is affected when the error had a substantial and injurious effect or influence in

---

8. These statements were not included on the portion of the videotape of appellant's statement offered by the State and shown to the jury.

9. Despite the fact that appellant was precluded from cross-examining Officer Razo about whether appellant had tried to end the interrogation, the court still instructed the jury to disregard appellant's statement to police if it found that appellant did not give his statement voluntarily or if it had a reasonable doubt as to its voluntariness.

10. *See* TEX CODE CRIM PROC. ANN. art. 38.22, § 6 (Vernon 2005).

11. Hearsay is not admissible except as provided by statute, the Texas Rules of Evidence, or other rules prescribed pursuant to statute. TEX.R. EVID. 802. Appellant cites no authority, nor can we find any, showing that this evidence is not hearsay or that the evidence falls within an exception to the hearsay rule.

determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997). In this case, we have already determined under appellant's second point of error that neither of the statements made by appellant about which appellant wanted to cross-examine Officer Razo was an unambiguous invocation of his right to end the interrogation. The statements indicated only that appellant was hungry and wanted to eat, not that he wanted to end the interrogation. Given this evidence, we conclude that the trial court's refusal to allow appellant to present this evidence did not have a substantial and injurious effect or influence in determining the jury's verdict. *See King*, 953 S.W.2d at 271.

We overrule appellant's fourth point of error.

### Latent Print Evidence

In points of error five through eight, appellant argues that the trial court erred when it admitted hearsay testimony in violation of his right to confrontation and the Texas Rules of Evidence. We will first address whether this evidence was inadmissible hearsay.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Torres v. State*, 71 S.W.3d 758, 760 (Tex.Crim.App.2002). We will not reverse a trial court's ruling on the admission of evidence unless that ruling falls outside the zone of reasonable disagreement. *Burden v. State*, 55 S.W.3d 608, 615 (Tex.Crim.App.2001).

 As a general rule, hearsay evidence is inadmissible unless it falls within one of several exceptions. *See* Tex.R. Evid. 802, 803. "Hearsay" is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. *Id.* 801(d). Thus, a statement not offered to prove the truth of the matter asserted is

not hearsay. *Davis v. State*, 169 S.W.3d 673, 675 (Tex.App.-Fort Worth 2005, no pet.) (citing *Dinkins v. State*, 894 S.W.2d 330, 347–48 (Tex.Crim.App.1995)).

### *Officer Benningfield's Testimony*

 In his sixth point of error, appellant argues that the trial court erred when it permitted Officer Benningfield to testify that two print experts in her laboratory, Officers Stairhime and Saldivar, both of whom had reached a conclusion regarding a latent print found at the scene, had reached the same conclusion. This evidence, coupled with Officer Stairhime's later testimony that the print belonged to appellant, effectively informed the jury that Officer Saldivar had also determined that the print belonged to appellant. Because testimony about Officer Saldivar's conclusion, according to appellant, constituted an out-of-court statement offered for the truth of the matter asserted, Officer Benningfield's testimony constituted inadmissible hearsay. *See* Tex.R. Evid. 801(d). The State responds that Officer Benningfield's testimony is not hearsay because it does not reveal an out-of-court statement made by Officer Stairhime or Officer Saldivar. The State relies on *Head v. State* to support its argument. *See* 4 S.W.3d 258 (Tex.Crim.App.1999). In *Head,* the defendant was charged with sexually assaulting his live-in girlfriend's 14–year–old daughter. *Id.* at 259. After revealing the abuse to her aunt, the girl spoke with an investigator, M. Peterson, from the district attorney's office. *Id.* at 259–60. At trial, the State called the victim's aunt, Peterson, and the victim to testify, in that order. Peterson testified as follows:

[STATE]: Were the statements [the victim's aunt and the victim's mother] gave consistent with—

[DEFENSE]: Objection, Your Honor. Calls for hearsay.

THE COURT: Overruled.

[STATE]: Were the statements they gave to you consistent with the facts . . . related to you by [the victim]?

[PETERSON]: Yes.

*Id.* at 260. The Court of Criminal Appeals held that the trial court did not abuse its discretion in allowing the jury to hear this testimony, explaining that:

> The trial court could have reasonably concluded that Peterson's testimony, when taken in context, did not lead to any inescapable conclusions as to the substance of the out-of-court statements. Specifically, the disputed testimony revealed only that the three statements related basically the same facts; it did *not* reveal the substance of what those facts were. Neither did any other evidence, at that point in the trial, indicate the contents of any of the three statements, what facts the statements had in common, or how any of the facts were consistent.

*Id.* at 262.

The *Head* case is very similar to the instant case. Here, Officer Benningfield testified on direct examination that, upon re-examining the latent print found on the window screen, she was unable to attribute it to appellant or to determine that it did not belong to him—*i.e.*, it was "unusable." Because she could not come to a conclusion, she asked other examiners to examine the print:

[BENNINGFIELD]: . . . there were five of us that looked at it.

[STATE]: Were there two that were able to come to a conclusion?

[BENNINGFIELD]: Yes.

[STATE]: And who were they?

[BENNINGFIELD]: [W.] Stairhime and [R.] Saldivar.

[STATE]: Did they come to the same conclusion?

[DEFENSE]: Your Honor, I object to that as being hearsay.

[COURT]: Objection to that question is overruled.

[STATE]: Without going into what their conclusion was, did these two individuals, [W.] Stairhime and [R.] Saldivar, come to the same conclusion.

[DEFENSE]: Again, Your Honor, I object. It has to be hearsay and it denies my right to confrontation.

[COURT]: Overruled. I'll allow her to answer that question.

[BENNINGFIELD]: Yes, they did.

As in *Head,* the trial court here could have reasonably concluded that Officer Benningfield's testimony, when taken in context, did not lead to any inescapable conclusions as to the substance of Officers Stairhime's and Saldivar's conclusions about the print. *See id.* at 262. The only information imparted by Officer Benningfield's testimony was that Officers Stairhime and Saldivar had examined the print and had reached a conclusion, and that their conclusions were the same. This testimony was not hearsay, and the trial court did not abuse its discretion in overruling appellant's objection. *See Torres,* 71 S.W.3d at 760; *Head,* 4 S.W.3d at 259–62.

We overrule appellant's sixth point of error.

### Officer Stairhime's Testimony

In his eighth point of error, appellant contends that the trial court erred when it permitted Officer Stairhime to indirectly testify that Officer Saldivar had agreed with his conclusion that a fingerprint found at the scene belonged to appellant.

On direct examination, Officer Stairhime testified that the latent print, which Officer Benningfield had deemed unusable, did, in his opinion, belong to appellant.

[STATE]: And because you had over ten [characteristic points on the fingerprint], your HPD protocol is that you require two examiners to look at it, correct?

[STAIRHIME]: That's correct.

[STATE]: And did another examiner look at this?

[STAIRHIME]: Yes, they [sic] did.

[DEFENSE]: I object to that as being hearsay and [it] denies the right of confrontation, Your Honor.

[COURT]: Overruled.

[STATE]: Did another examiner look at this print?

[STAIRHIME]: Yes he did.

[STATE]: And who was that?

[STAIRHIME]: [R.] Saldivar.

[STATE]: And did Mr. Saldivar have a different conclusion from your conclusion?

[DEFENSE]: I object to that as being hearsay and [it] denies the right of confrontation.

[COURT]: Sustained.

[STATE]: Without going into what he said, is there anything that—is there anything about Saldivar's conclusion that prevented you from testifying that it was a match to this defendant?

[DEFENSE]: Again, Your Honor, I would object to that. The same objection.

[COURT]: Sustained.

[STATE]: Well, of all the six latent print examiners, was anybody in the latent print lab able to exclude the defendant, at the Defense's request that you look at all this?

[DEFENSE]: I object to that, also, as it denies the right of confrontation.

[COURT]: Sustained.

[STATE]: Well, if you were going to testify in a trial about the characteris-tics of a fingerprint and say that it matched the suspect or anybody as a positive identification, would it require more than one examiner to come to the same conclusion?

[DEFENSE]: Again, Your Honor, I would object that it's a roundabout way of trying to circumvent the court's rulings already that it's hearsay and denies the right of confrontation.

[COURT]: I'm going to overrule that objection. You may answer the question.

[STAIRHIME]: Yes. In order for me to come to court and testify to a positive identification, I would have to have at least one more examiner ... come to the same conclusion.

Appellant is correct in arguing that the trial court erred when it permitted Officer Stairhime to indirectly testify to Officer Saldivar's conclusion about the print. In criminal cases, Texas Rule of Evidence 803(8)(B) excludes as inadmissible hearsay any record, report, statement, or data compilation which sets forth matters "observed by a police officer and other law enforcement personnel." TEX.R. EVID. 803(8)(B); *Baker v. State*, 177 S.W.3d 113, 122 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (citing *Cole v. State*, 839 S.W.2d 798, 804–07, 804 n. 8 (Tex.Crim.App.1990) (op. on reh'g) (holding that full-time forensic chemists employed by Texas Department of Public Safety were law-enforcement personnel whose reports were not admissible under public-record hearsay exception (rule 803(8)(B)) or business-record hearsay exception (rule 803(6)))).

Here, Officer Stairhime's testimony that the print, in his opinion, belonged to appellant, taken in conjunction with the previously admitted testimony of Officer Benningfield that Officers Stairhime and

Saldivar both had examined the print and had reached a conclusion and that their conclusions were the same, necessarily revealed the substance of Officer Saldivar's conclusion, namely that in his opinion, the print belonged to appellant. Under Rule 803(8)(B), this is hearsay. *See* Tex.R. Evid. 803(8)(B); *Baker,* 177 S.W.3d at 122. Thus, we conclude that the trial court abused its discretion when it overruled appellant's objection. *See Torres,* 71 S.W.3d at 760.

Having found that the trial court abused its discretion in overruling appellant's objection, we must determine whether the error harmed appellant. *See* Tex.R.App. P. 44.2(b). The admission of inadmissible hearsay is nonconstitutional error and will be considered harmless if, after examining the record as a whole, we are reasonably assured that the error did not affect appellant's substantial rights—*i.e.,* did not have a substantial and injurious effect or influence in determining the jury's verdict. *See id.; Garcia v. State,* 126 S.W.3d 921, 927 (Tex.Crim.App.2004); *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998). Moreover, the improper admission of evidence is harmless if the same or similar evidence is admitted without objection at another point in the trial. *See Leday v. State,* 983 S.W.2d 713, 717 (Tex.Crim.App.1998).

When Officer Stairhime's testimony was admitted over appellant's objection, the jury already knew from Officer Benningfield's testimony that Officers Stairhime and Saldivar both had examined the print and had reached a conclusion and that their conclusions were the same; and the jury also knew that it was Officer Stairhime's opinion that the print belonged to appellant. From this testimony, the jury already knew, albeit indirectly, that Officer Saldivar had also concluded that the print belonged to appellant. Thus, Officer

Stairhime's testimony that Officer Saldivar had agreed with his conclusion was cumulative of Officer Benningfield's testimony about Officers Stairhime's and Saldivar's conclusion. Therefore, any error in the admission of this testimony was harmless. *See Leday v. State,* 983 S.W.2d 713, 717 (Tex.Crim.App.1998) (improper admission of evidence is harmless if same or similar evidence is admitted without objection at another point in trial).

We overrule appellant's eighth point of error.

### Confrontation

In his fifth and seventh points of error, appellant argues that the trial court erred when it admitted, in violation of his right to confrontation, (a) Officer Benningfield's testimony about Officers Stairhime and Saldivar and (b) Officer Stairhime's indirect testimony about Officer Saldivar's conclusion.

Regarding Officers Benningfield and Stairhime, appellant's right to confrontation was not denied. Officers Benningfield and Stairhime testified at trial and the trial court permitted appellant to fully cross-examine them. *Cf. Cooper,* 95 S.W.3d at 492 (noting that defendant's constitutional right of confrontation is violated when trial court improperly limits cross-examination of witness). Conversely, Officer Saldivar's conclusion about the print was admitted into evidence indirectly through the testimony of Officer Stairhime. Because Officer Saldivar was not available to testify, however, appellant was denied his right to cross-examine him, in violation of his right to confrontation. This error was harmless, however, because evidence had already been admitted through the testimony of Officer Stairhime—whom appellant was permitted to fully cross-examine—that the print be-

longed to appellant. *See Leday*, 983 S.W.2d at 717.

We overrule appellant's fifth and seventh points of error.

## Legal Sufficiency

In his ninth point of error, appellant contends that the evidence was legally insufficient to support his conviction for burglary of a habitation because the State failed to establish that he entered E.C.'s house with the intent to commit indecency with a child.

The indictment charged that appellant "did ... unlawfully ... enter a habitation owned by [E.C.] ... and commit or attempt to commit a felony of indecency with a child." This language tracks the language of Texas Penal Code section 30.02(a)(3), which states that a person commits burglary if, without the effective consent of the owner, the person "enters a building or habitation and commits or attempts to commit a felony, theft, or an assault." TEX. PEN.CODE ANN. § 30.02(a)(3) (Vernon 2003). This language also tracks the language in the charge to the jury, which instructed: "if you find from the evidence beyond a reasonable doubt that ... the defendant, [appellant], did ... unlawfully ... enter a habitation owned by [E.C.] ... and commit or attempt to commit a felony of indecency with a child, then you will find the defendant guilty of burglary of a habitation, as charged in the indictment." The jury's verdict, therefore, found appellant guilty of burglary of a habitation, in conjunction with his commission or attempt to commit the underlying felony of indecency with a child.

The State was not required to prove that appellant entered E.C.'s home with intent to commit indecency with a child; nor was the jury asked to reach a verdict based on appellant's entry into E.C.'s home with the intent to commit the offense of indecency with a child. However, the judgment, states that appellant was convicted of the offense of burglary of a habitation with intent to commit indecency with a child. *See* TEX. PEN.CODE ANN. § 30.02(a)(1) (Vernon 2003).[12] The language "with intent" was erroneously included in the judgment. Thus, we will modify the judgment and affirm it as modified. *See* TEX.R.APP. P. 43.2(b) (a court of appeals may "modify the trial court's judgment and affirm it as modified"). The judgment is modified to delete any reference to appellant's intent to commit indecency with a child. The judgment should reflect the jury's verdict that in committing burglary, appellant committed or attempted to commit indecency with a child.

Because appellant's argument rests solely upon the State's failure to prove his intent to commit indecency with a child and no such proof of intent was necessary, we overrule appellant's ninth point of error.

## Conclusion

We affirm the judgment of the trial court as modified.

---

12. A person commits burglary if, without the effective consent of the owner, the person "enters a habitation or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault...." TEX. PEN.CODE ANN. § 30.02(a)(1) (Vernon 2003).