Opinion issued September 28, 2007










 








In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00444-CR






SCHUYLER DAVIS SMITH, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 23rd District Court

Brazoria County, Texas

Trial Court Cause No. 47,160







O P I N I O N

 Appellant, Schuyler Davis Smith, appeals from a judgment convicting him of
the first-degree felony of aggravated sexual assault of a child. See Tex. Pen. Code
Ann. § 22.021(a)(2)(b) (Vernon Supp. 2006). Appellant pleaded guilty to the court
without a plea agreement with the State. After an evidentiary hearing, the court
sentenced appellant to 40 years' confinement in prison. In two issues, appellant
contends that he is entitled to a new sentencing hearing because the trial court abused
its discretion by (1) admitting the clinical records of appellant's minor daughter who
was not the victim of the offense and was not named in the indictment and (2)
admitting hearsay evidence suggesting that appellant put sleeping medicine in
complainant's chocolate milk on the evening of the offense. We conclude that the
trial court did not abuse its discretion by admitting the clinical records of appellant's
daughter. We also conclude appellant was not harmed by admission of the hearsay
statement because the same or similar evidence was admitted without objection. We
affirm.

Background

 On March 26, 2004, appellant's two daughters, T.S. and D.S., had two friends,
V.B. and A.M., spend the night. During the night, V.B., who was 13 years old at the
time, awoke to find appellant kneeling at her feet, sexually assaulting her. The next
morning, V.B., who was upset, told Tracy Smith that she needed to go home. Tracy
was appellant's wife and T.S. and D.S.'s mother. A few days later, V.B. reported the
incident to her school counselor, who called V.B.'s mother to request a meeting. 
Before the meeting occurred, however, V.B.'s mother became aware of the sexual
assault through a phone call from a relative. The relative told V.B.'s mother that V.B.
had told an aunt over the telephone about the assault. The next day, the school
counselor told V.B.'s mother about the incident. The school counselor also reported
the offense to the Texas Department of Protective and Regulatory Services (TDPRS).

 A TDPRS caseworker interviewed V.B. V.B. reported that after she had fallen
asleep, she felt something hurt her. V.B. described the assault by relating that
appellant penetrated her female sexual organ with his male sexual organ after he
moved her shorts and panties to the side. The medical examination of V.B. revealed
trauma "consistent with type(s) of acts described or time lapse since the last incident
of abuse." 

 A.M., another child present that night, also reported inappropriate conduct by
appellant. She was interviewed by Detective Wright of the Alvin Police Department
and a TDPRS caseworker. A.M. reported that appellant came into the bedroom where
she was sleeping. Appellant tried to get her to roll over onto her stomach by telling
her that he had a magic finger. When A.M. refused to roll over, appellant kissed her
on the cheek and told her to keep it a secret. Appellant then returned several times
throughout the night to kiss her. In the interviews of T.S. and D.S., they each denied
that appellant ever touched them inappropriately. 

 On two occasions, Detective Wright went to appellant's house to speak with
him about the complaints against him. During the first visit, appellant denied the
offense. On the second visit, appellant was evasive, refusing to answer direct
questions. Appellant asked if there was any medical evidence to support the
accusation. Believing that discussing the case with appellant at his house was not
productive, Detective Wright asked him to call her to arrange a time to come to her
office to speak to her, but appellant never called.

 Although he denied the offense during the police interview, appellant "broke
down and confessed" to his wife, admitting that he touched V.B.'s "private parts." 
Appellant claimed, however, that he only used his hand to touch V.B. He also
admitted to "scaring" A.M., touching M.B., a six-year old girl, and touching C.N., a
nine-year old girl. Appellant said that he never touched T.S. or D.S. Tracy reported
appellant's statements to authorities, who charged appellant with the aggravated
sexual assault of V.B.

 Several months later, Tracy became concerned over the subject lines in some
emails on the computer appellant used. She turned the computer over to Detective
Wright. An examination by the Alvin Police Department's computer forensics
detective revealed that of the over 25,000 images on the hard drive, he found "seven
images that [he] believed to be underaged or child pornography." In addition, he
found on the hard drive five common terms used on the internet to search for or
describe child pornography, many of which were associated with a user name that
corresponded to appellant. The detective also found 600 other files that he marked
"of interest" because they were pornographic. 

 Appellant pleaded guilty without any agreement with the State regarding
punishment. V.B., Tracy, and Detective Wright were among the witnesses who
testified at the punishment hearing. The State offered State's Exhibit 3, the offense
report, into evidence at the beginning of the hearing. Defense counsel affirmatively
stated, "No objections, your honor." The State also offered clinical records of T.S.'s
counseling as State's Exhibit 4. Appellant objected that the records were not relevant
because victim impact evidence from T.S. was inadmissible since T.S. was not the
victim named in the indictment and there was "no credible evidence that an offense
had been committed against [T.S.]." The State responded that the records were
admissible as extraneous offense evidence because "[T.S.] has been a victim of
[appellant]." The trial court overruled appellant's objection.

 Appellant offered into evidence Defense Exhibit 1, which was a report done
at his request by a certified sex therapist. The report stated that, although appellant 
admitted his conduct, he "does not fully understand the dynamics involved in his
offenses." The therapist opined that appellant may be "less likely to control his
impulses." The report also states that some factors that might indicate appellant's risk
of re-offending were his "minimization of all personal responsibility for the offense"
and his "limited to little remorse or empathy expressed for his victim."

Victim Impact Evidence

 In his first issue, appellant contends that the trial court abused its discretion by
admitting into evidence the psychiatric and psychological records of appellant's
daughter, T.S., who was not named in the indictment. Appellant does not identify any
particular statements made by T.S. 

 At a sentencing hearing, "evidence may be offered by the [S]tate and the
defendant as to any matter the court deems relevant," including extraneous offense
evidence. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon 2006). 
Extraneous offenses admitted at sentencing may be unadjudicated offenses. See id. 

 The records introduced by the State contain evidence of extraneous offenses
committed against T.S. More specifically, T.S. said that appellant "pushed her hard
and made her hit her head." T.S. also said that appellant was "mean" and "push[ed]
her into a wall." T.S. described these events as "abuse" by appellant. The records
also show that "[D.S.] said that . . . [she] remembers that [T.S.] told her a long time
ago that their father 'pushed a fork in [T.S.'s] privates.'" This evidence is admissible
in the punishment phase of trial because it is evidence of unadjudicated crimes or bad
acts committed by appellant. See Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1).

 "'Victim impact' evidence is evidence of the effect of an offense on people
other than the victim." Roberts v. State, 220 S.W.3d 521, 531 (Tex. Crim. App.
2007) (emphasis in original) (holding that testimony in sentencing phase of trial by
victim of extraneous robbery who described how robbery emotionally affected her is
not victim impact evidence). Evidence by T.S. about how she was emotionally
affected by appellant's violence against her is not victim impact evidence because she
was the victim of the assaults. See id.

 Appellant points to Haley and Cantu. See Haley v. State, 173 S.W.3d 510, 512
(Tex. Crim. App. 2005); Cantu v. State, 939 S.W.2d 627, 636 (Tex. Crim. App.
1997). In both cases, the Court of Criminal Appeals held that the extraneous offense
victim impact evidence was not relevant and thus not admissible. Haley, 73 S.W.3d
at 518; Cantu, 939 S.W.2d at 637. Haley and Cantu each disallowed evidence from
the mother of the murdered victim, who was not a victim named in the indictment. 
Haley, 73 S.W.3d at 518; Cantu, 939 S.W.2d at 637. In comparison, here, as in
Roberts, the evidence concerning the extraneous offense is from the victim herself.
Roberts, 220 S.W.3d at 531. As the Court of Criminal Appeals stated in Roberts,

 

 The evidence presented here was evidence of the effect of a different
offense on the victim (of the extraneous offense), and thus is
distinguishable from the situation presented in Cantu. The evidence was
admissible. 

Id. (Emphasis in original).

 Because the clinical records were admissible to show appellant's commission
of unadjudicated extraneous offenses against T.S., the trial court did not err by
admitting them and by overruling appellant's objection on the ground that the records
were inadmissible victim impact evidence. 

 We overrule appellant's first issue. 

Admission of Hearsay

 In his second issue, appellant contends that the trial court erred by admitting
hearsay evidence when Tracy testified. Appellant challenges Tracy's testimony that
"intimated that Appellant had placed sleeping medication in the victim's chocolate
milk prior to committing the offense." Appellant states that Tracy obtained this
information based on hearsay because she learned the information from the children
who were at her house on the night of the offense. The State responds that the same
evidence was admitted without objection by appellant.

 Assuming without deciding that the complained of testimony is inadmissible
hearsay, we must determine whether the error harmed appellant. See Tex. R. App.
P. 44.2(b). We must disregard non-constitutional error that does not affect the
appellant's substantial rights. Haley, 173 S.W.3d at 518. The appellant's substantial
rights are not affected when the error did not have a "substantial and injurious effect
or influence" on the fact-finder's decision. Id. Evidence that is improperly admitted
is harmless if the same or similar evidence is admitted without objection at another
point in the trial. Smith v. State, No. 01-05-00819-CR, 2007 WL 852344, at *14
(Tex. App.--Houston [1st Dist.], March 22, 2007, pet. filed) (citing Leday v. State,
983 S.W.2d 713, 717 (Tex. Crim. App. 1998)). 

 Appellant contends that the trial court erred by allowing Tracy to testify that
she was suspicious of appellant giving the children chocolate milk because her
daughter heard "crinkling noises" in the kitchen and her daughter reported not being
allowed to go into the kitchen. Tracy also testified,

 [T]hey said that one of the children wouldn't drink their [sic] milk
because it tasted funny. And my daughter wanted it, and he said, no, she
couldn't have it.


 Appellant did not object to the State's offer of the offense report as State's
Exhibit 3. The offense report admitted into evidence contains a statement from Tracy
that states,

 When I moved in June of this year, I was packing and digging at
the top back of the top cabinet in the kitchen. I had to get on the cabinet
to see. I stuck my head in and looked. If I was standing on the floor, I
could have reached, but couldn't see. There was box [sic] of sleeping
pills that were hidden. It is the cabinet we used for medicine for the
kids, their cough syrup and things. The sleeping pills were over the
counter type. They were inside a small box. There were still some in
the box. I think they were blue, but I am not sure. They are the pop out
kind in the krinkly [sic] foil. . . . . I though it was strange we had the
pills.


 One night after we had moved, [T.S.] and I were talking. She
came to me and she said, "momma, [sic] I kind of remember something
about that night. I remember Daddy making chocolate milk for us.
[V.B.] didn't want her's [sic] because it tasted funny. Daddy said no, I
couldn't have it. He said that [A.M.] could have it. [A.M.] didn't want
it. [V.B.] had already drank [sic] part of it. Daddy poured it out." 
Immediately I asked [T.S.] if she remember [sic] her dad making the
milk. She said yes. I asked if she was in the kitchen with him. She said
he wouldn't let her come in. She said she remember [sic] him opening
the medicine cabinet and reaching in. She said she heard him krinkling
[sic] something and crushing something. That is all I got out of her. 
The next morning I called [V.B.'s] grandmother. I told her what she had
told me. That is when [V.B.'s Grandmother] said that [V.B.] had told
her Aunt Heather she was concerned why she had not woken up earlier. 
Heather asked her something like had she drank or ate anything that
night that tasted funny. [V.B.] said yea, she drank some bad chocolate
milk. So, when I told her about the pills, it all started coming together
like pieces to a puzzle.


 This evidence is the same or similar to the evidence appellant contends is 




hearsay. Because it was admitted without objection earlier during the sentencing
hearing, the error, if any, is harmless. Smith, 2007 WL 852344, at *14 (holding that 
no harm resulted from erroneous admission of inadmissible hearsay when record
showed same or similar evidence was admitted without objection) (citing Leday, 983
S.W.2d at 717). 

 We overrule appellant's second issue.Conclusion

 We affirm the judgment of the trial court.

 

 

 Elsa Alcala

 Justice


Panel consists of Chief Justice Radack and Justices Alcala and Bland.


Publish. Tex. R. App. P. 47.2(b).