Opinion issued March 13, 2008







 

 






In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00143-CR






MERKLE CHARLES JUDGE, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the County Criminal Court at Law No. 3

Harris County, Texas

Trial Court Cause No. 1374011






MEMORANDUM OPINION


 A jury convicted appellant, Merkle Charles Judge, of assault of a family
member, (1) and the trial court assessed punishment at confinement for one year. On
appeal, appellant contends the trial court erred by (1) overruling his motion for
mistrial after the prosecutor commented on appellant's right not to testify; (2)
refusing to permit appellant to impeach the complaining witness with a prior
inconsistent statement and an allegedly fraudulent insurance application; and (3)
admitting evidence of an extraneous offense. We affirm.

I. BACKGROUND

 The complainant, Edith Judge, and appellant were married in 2003. Edith
testified that they had no children together, but that she had two children--a 13-year-old boy, Kalen, and a 14-year-old girl, Kelse. 

 On December 5, 2005, Edith came home from work and found appellant
cooking supper. Edith, appellant, and the two children went to Wal-Mart together,
and then returned home. Because Edith's son had forgotten to take out the garbage,
appellant left to take the garbage to a nearby dumpster. While he was gone, Edith left
to pick up two children who were planning to spend the night with her children. 
When she returned, appellant was still not home. The children ate dinner, but Edith
did not because she was upset that appellant had not returned.

 Edith went to bed, and, at 11 p.m.--after being gone for three hours--appellant
returned. Appellant came into the bedroom and asked Edith if she was awake. Edith
began arguing with appellant about where he had been and why he had been gone so
long. Appellant told Edith that he had been out playing dominoes.

 Edith told appellant he could stay at the house, but that she was leaving
because she did not want to argue in front of the children. As Edith began collecting
the clothes that she needed for work, appellant took an alarm clock, threw it at the
wall, and began cursing.

 Edith went outside to discover that appellant had moved his truck to block her 
vehicle so that she could not leave. Appellant refused to move his truck and went
back inside. Unable to use her car, Edith began walking down the street. Appellant
came back outside, yelling and cursing at Edith to come home. Appellant then
punched Edith, and she fell to the grass. Appellant dragged Edith to the sidewalk,
where he continued punching and kicking her. 

 Appellant grabbed Edith's keys and said that he was "going to get what was
his." Edith believed that he meant that he was going to take her daughter and leave. 
Edith walked back to the house and saw appellant with Kelse. Appellant ordered
Kelse to get in the truck, which she did. Appellant then revved the engine on his
truck and it jumped forward as if he were going to hit Edith. Appellant then drove
off down the street with Kelse.

 Edith could not get into the house because appellant had taken her keys. Her
son, however, opened the garage door to let her in. Appellant then returned, and
when he saw the garage door opened, he began to fuss at Kalen for opening it.

 Appellant then told Edith and Kalen to get in the truck. Kalen got in the back
seat with Kelse and Edith got in the front passenger seat. Appellant then drove away,
leaving Kelse's and Kalen's friends alone at the house.

 As they were driving, Edith kept telling appellant to slow down because she
was in pain, but appellant refused to do so. Appellant then stopped the truck and told
the children to get out and Edith to get in the back seat. Before the children got back
in the truck, appellant turned to Edith and asked, "What happened tonight?" Edith
asked what he meant. Appellant again asked, "What happened tonight?" Edith said,
"Well, I don't know what you want me to say," to which appellant replied, "Well, I'm
not going to jail for anybody; and I'm not losing my kids."

 Appellant offered to drop Edith off at the hospital, but she refused because she
did not want to leave her children with appellant. Edith was afraid appellant would
take her children and leave. So, Edith told appellant to go back to the house.

 Upon arrival at the house, Edith went into the bathroom and began to wash her
face. Appellant asked her if she was going to press charges against him and send him
to jail. Edith said that she was not because she was afraid of another assault. 
Appellant went to bed, and Edith also tried to sleep but she could not do so because
of the pain in her side. The next morning, Edith drove herself to the emergency room.

 At the hospital, Edith told hospital personnel that she was not going to discuss
her attacker because he was still with her children. After a while, a nurse told Edith
that she had two broken ribs. Edith at that point decided to talk about the attack.

 She called appellant and told him to leave the kids at home and come pick her
up. Appellant asked her what she had told hospital personnel, and Edith told him that
she had said that she was attacked by a boyfriend who was upset because she was
reconciling with her husband. After talking with appellant, Edith described appellant
to police and told them what he would be driving. When appellant arrived at the
hospital, he was arrested.

 Appellant did not testify, but called Kelse to testify. Kelse's testimony tended
to corroborate that of her mother. When asked by defense counsel whether she had
seen appellant hit her mother on the night in question, she replied, "No, but I've seen
him like hit her before."

II. PROSECUTOR'S COMMENT ON FAILURE TO TESTIFY

 In point of error one, appellant argues that the prosecutor commented on his
failure to testify during the guilt/innocence phase of the trial, thus violating his Fifth
Amendment right not to testify and article 38.08 of the Texas Code of Criminal
Procedure. In closing argument, the prosecutor stated as follows:

 Now, defense counsel says, we're not arguing that the witness was [not]
assaulted. You know why they are not arguing why the witness wasn't
assaulted? Because we have the pictures. We have the medical records. 
So, now, hands down she was assaulted after they were confronted with
the evidence, overwhelming evidence.


 Now, let's attack the person who was already attacked so we can save
the attacker who is not man enough to stand up and take responsibility
for what he did to this woman.


 [Defense Counsel]: Objection, Your Honor. May we approach?


 [Trial Court]: Yes, sir.


 [Defense Counsel]: Your Honor, that's improper closing. It is improper
closing argument, which intimates to the jury that my client failed to testify.


 [Trial Court]: Sustained.


 [Defense Counsel]: Okay. Your Honor, I would request at this time a mistrial.


 [Trial Court]: Denied.


 [Prosecutor]: He mentioned--it was not that, Your Honor. It was the
fact he's still not taking responsibility for what he did.


 [Trial Court]: I sustain the objection.


 [Defense Counsel]: Would you request the jury to disregard the
statement?


 [Trial Court]: Members of the jury, please disregard the last statement
by the prosecutor.


 [Defense counsel]: I'd like to reiterate my request for a mistrial.


 [Trial court]: Denied.


 A comment by a prosecutor on the accused's failure to testify is a violation of
his Fifth Amendment privilege against self-incrimination, U.S. Const. Amend. V ,
and also violates article 38.08 of the Texas Code of Criminal Procedure. However,
such an comment is impermissible only if, when viewed from the jury's standpoint,
the comment is manifestly intended to be, or is of such character that a typical jury
would naturally and necessarily take it to be a comment on the defendant's failure to
testify. Bustamante v. State, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001). It is not
sufficient that the comment might be construed as an implied or indirect allusion to
a defendant's failure to testify. Id. When the remark calls the jury's attention to the
absence of evidence that only a defendant's testimony could supply, it is
impermissible. See Garrett v. State, 632 S.W.2d 350, 353 (Tex. Crim. App. 1982). 
However, if there is evidence in the record supporting the comment, then no error is
shown. Howard v. State, 153 S.W.3d 382, 386 (Tex. Crim. App. 2005) (citing
Fearance v. State, 771 S.W.2d 486, 514 (Tex. Crim. App. 1988)).

 A comment by a prosecutor on a defendant's refusal to take responsibility may
be a comment on his failure to testify. See Roberson v. State, 100 S.W.3d 36, 40-41
(Tex. App.--Waco 2002, pet. ref'd). However, in this case there was evidence in the
record that appellant was not going to take responsibility for his crime. Edith testified
that appellant asked her, "What happened tonight?" When Edith responded, "Well,
I don't know what you want me to say," appellant replied, "Well, I'm not going to jail
for anybody; and I'm not losing my kids." The clear implication of this evidence was
that appellant wanted Edith to make up a story so that he would not be held
responsible for her injuries. Because there was evidence in the record that appellant
was refusing to accept responsibility for the crime, the prosecutor's comment was not
error.

 Even if we assume that the argument was an improper reference to appellant's
failure to testify, we find the error to have been cured. After appellant objected, the
trial court sustained the objection and ordered the jury to disregard the prosecutor's
comment. The jury charge also instructed the jury that it could not consider for any
purpose appellant's decision not to testify. In most circumstances, an instruction to
disregard improper argument is considered a sufficient response by the trial court. 
See Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). Error in a
prosecutor's improper jury argument concerning a defendant's failure to testify may
be cured by an instruction to disregard the comment. See Longoria v. State, 154
S.W.3d 747, 763-64 (Tex. App.--Houston [14th Dist.] 2004, pet. ref'd); Linder v.
State, 828 S.W.2d 290, 300 (Tex. App.--Houston [1st Dist.] 1992, pet. ref'd). "The
. . . presumption that an instruction [to disregard] generally will not cure comment on
failure of the accused to testify . . . has been eroded to the point that it applies only
to the most blatant examples. Otherwise, the Court has tended to find the instruction
to have force." Dinkins v. State, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995)
(quoting Waldo v. State, 746 S.W.2d 750, 753 (Tex. Crim. App. 1988)). The
comment in this case was not so blatant as to render the instruction to disregard
ineffective.

 We overrule point of error one.

III. EXCLUSION OF IMPEACHMENT EVIDENCE

 In points of error two through five, appellant contends the trial court erred by
refusing to permit appellant to impeach the complaining witness with (1) a prior
inconsistent statement and (2) an allegedly fraudulent insurance application. We
review a trial court's decision to admit or exclude evidence for abuse of discretion.
Osbourn v. State, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002). A trial court abuses
its discretion if it acts outside the zone of reasonable disagreement. Burden v. State,
55 S.W.3d 608, 615 (Tex. Crim. App. 2001).

A. Prior Inconsistent Statement

 During direct examination, Edith testified that appellant was not the biological
father of Kelse. On cross-examination, the following exchange took place:

 [Defense counsel]: Okay. Ma'am, you testified yesterday under oath
that Kelse was not, was not Merkle's daughter; is that correct?


 [Edith]: He's not her biological father.


 [Defense counsel]: Do you recall, ma'am, ever making sworn testimony
that Merkle was?


 [Edith]: I have went through court proceeding--


 [Defense counsel]: Just "yes" or "no," ma'am.


 [Prosecutor]: Your Honor, I'd like to object to the relevance of the
question.


 [Trial court]: Repeat your question, please.


 [Defense counsel]: Your Honor, the question is she--had she previously
provided or made a statement under oath that the daughter was, indeed,
Mr. Merkle Judge's daughter?


 [Trial court]: I sustain the objection.


 [Defense counsel]: May we approach?


 [Trial court]: Yes, sir.


 [Defense counsel]: Your Honor, the relevance of the question is--of
course we already know about the Motion in Limine, but I'm trying to
impeach her with the prior inconsistent statements. There has been an
application for a protective order that Ms. Judge had sworn to in
December of 2004 wherein she stated under oath that Kelse was, indeed,
the biological daughter of --or Merkle Judge was, indeed, the biological
father of Kelse. I'm trying to impeach her with respect to a prior
inconsistent statement. I'm not trying to offer this as evidence, Your
Honor.


 [Trial court]: Right. But the statement has to be relevant to the issues in
this trial. How is it relevant?


 [Defense counsel]: The relevance, Judge, it's relevant with respect to her
character. She testified under oath that Kelse was, indeed, the biological
father. My point is to show that she's obviously just fabricating and she
done [sic] so under oath here and that she may very well be doing so
under oath now.


 [Trial court]: I sustain the objection.

 

 1. Impeachment on a Collateral Issue ?


 Generally, using prior inconsistent statements to impeach a witness on a
collateral matter is impermissible. Flannery v. State, 676 S.W.2d 369, 370 (Tex.
Crim. App. 1984). An exception applies when a witness testifies gratuitously as to
a collateral matter. Hammett v. State, 713 S.W.2d 102, 105 (Tex. Crim. App. 1986).
In that situation, the witness may be impeached by showing that he lied or is mistaken
about that collateral matter. Id.

 Whether appellant was Kelse's biological matter is a collateral matter. 
However, once Edith testified about that collateral matter, appellant could impeach
her credibility on that issue with a prior inconsistent statement.

 2. Foundation Requirements of Rule 613(a) met?

 Nevertheless, the State argues that the trial court did not err in refusing to allow
the prior inconsistent statement because appellant did not lay the foundation required
by Texas Rule of Evidence 613. (2) To lay the foundation required by Rule 613(a), an
appellant must establish (1) "identification of the statement (by time, place, and
person)," (2) "a summary of the contents," and (3) "a denial by the witness as to what
the statement contains." See Ferguson v. State, 97 S.W.3d 293, 296 (Tex.
App.--Houston [14th Dist.] 2003, pet. ref'd); Joseph v. State, 960 S.W.2d 363, 366
(Tex. App.--Houston [1st Dist.] 1998, pet. ref'd) (holding that trial court erred in
refusing to allow defendant to impeach witness with prior inconsistent statement
because "adequate foundation" had been laid).

 Defense counsel informed the trial court that he wished to impeach Edith with
a prior inconsistent statement she had made in an application for a protective order
sworn to in December of 2004 wherein she stated under oath that Kelse was
appellant's biological child. However, appellant was not permitted to ask Edith
whether she denied making the inconsistent statement because the trial court
erroneously concluded that the question was improper impeachment on a collateral
issue.

 The purpose of the foundation requirements for rule 613(a) is to put the witness
on notice as to which statements are going to be used to impeach his or her
credibility. Allen v. State, 788 S.W.2d 637, 640 (Tex. App.--Houston [14th Dist.]
1990, pet. ref'd). In this case, appellant gave adequate notice of which statement was
going to be used to impeach Edith. "The rule of admissibility of evidence of prior
inconsistent statements should be liberally construed and the trial judge should have
discretion to receive any evidence which gives promise of exposing falsehood."
Aranda v. State, 736 S.W.2d 702, 707 (Tex. Crim. App. 1987); Garcia v. State, 871
S.W.2d 279, 284 (Tex. App.-- El Paso 1994, no pet.).


 3. Harmless Error?

 Having decided that the trial court erred by refusing to allow appellant to
impeach Edith with a prior inconsistent statement, we turn to the issue of harm. Improper limitation of cross-examination violates the confrontation clauses of
both the state and federal constitutions and is subject to a constitutional harmless
error analysis. U.S. Const. amend. VI; Tex. Const. art. 1, § 10; Tex. R. App. P.
44.2(a); Lopez v. State, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000). 

 Because a violation of the right to cross-examination under the Confrontation
Clause necessarily means that the testimony was not permitted before the fact-finder,
we apply a three-pronged test in our review of the exclusion of such evidence. Shelby
v. State, 819 S.W.2d 544, 547 (Tex. Crim. App. 1991); Smith v. State, ___ S.W.3d
___, No. 01-05-00819-CR, 2007 WL 852344, at *8 (Tex. App.--Houston [1st Dist.]
Mar. 22, 2007, no pet. h.). First, a reviewing court must assume that the damaging
potential of the cross-examination was fully realized. Shelby, 819 S.W.2d at 547
(citing Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438, 89
(1986)); Smith, 2007 WL 852344 at *8. Second, with that assumption in mind, we
analyze the error in connection with the following factors: (1) the importance of the
witness's testimony to the prosecution's case; (2) whether the testimony was
cumulative; (3) the presence or absence of evidence corroborating or contradicting
the witness's testimony on material points; (4) the extent of cross-examination
otherwise permitted; and (5) the overall strength of the prosecution's case. Shelby,
819 S.W.2d at 547 (citing Van Arsdall, 475 U.S. at 684, 106 S. Ct. at 1438); Smith,
2007 WL 852344 at *8. Finally, keeping the first two prongs in mind, we determine
whether the error was harmless beyond a reasonable doubt. Tex. R. App. P. 44.2(a);
Shelby, 819 S.W.2d at 547; Smith, 2007 WL 852344, at *8.

 Under Van Arsdall we must focus on Edith's testimony and assume that the
damaging potential of the cross-examination was fully realized. In other words, we
must assume the jury was fully informed that Edith had given a prior sworn statement,
contrary to her testimony at trial, in which she testified that appellant was Kelse's
biological father. We then apply the following five factors:

 a. The Importance of the Witness'sTestimony in the Prosecution's
Case


 Edith's testimony was obviously important to the prosecution's case. She was
the complaining witness and testified to how appellant had beaten and kicked her on
the night in question.

 b. Whether the Testimony Was Cumulative

 Edith's testimony was cumulative of other evidence in some regards. Kelse,
who was called to testify about the events in question, corroborated most of Edith's
testimony. However, Kelse did not actually see appellant hit Edith and was not able
to provide direct evidence that appellant was Edith's attacker.


 c. The Presence or Absence of Evidence Corroborating or
Contradicting the Testimony of the Witness on Material Points


 There was a significant amount of evidence corroborating Edith's testimony. 
Specifically, Kelse corroborated almost all of Edith's testimony. Kelse heard her
parents arguing and heard something being thrown against the wall. This
corroborated Edith's testimony that appellant threw an alarm clock at the wall. Kelse
also saw appellant with her mother immediately after the beating while Edith was still
bleeding and in obvious pain. Kelse corroborated that appellant told her get in the
truck with him, and that he drove the truck towards Edith and made her leap away
from the truck. Kelse corroborated that appellant forced her, her brother, and Edith
get in the car, and that appellant later stopped, and ordered the kids out of the car. 
This portion of Kelse's testimony was consistent with Edith's testimony that, at one
point, appellant ordered the children to get out of the truck and move to the backseat. 
While the children were out of the car, Edith testified that appellant told her "he
wasn't going to jail for anyone." Deputy Welch, who was at the hospital, testified
that Edith told him that she had beaten up by a man, but refused to tell him who it was
because the man was still with her children. This corroborated Edith's testimony
exactly.

 In contrast, there was no evidence that anyone other than appellant was Edith's
attacker. 


 d. The Extent of Cross-Examination Otherwise Permitted

 Appellant was otherwise permitted to cross-examine Edith fully. Specifically,
appellant was allowed to ask Edith about Kelse's paternity. Edith testified that, even
though she had stated on direct examination that appellant was not Kelse's father, she
really did not know who the child's father was, because no paternity test had ever
been performed.

 e. The Overall Strength of the Prosecution's Case

 The prosecution's case was strong. Edith testified about the beating and the
events both before and after it. Although she was the only eyewitness, Kelse's
testimony corroborated the events before and after. Also, the medical records
corroborated Edith's testimony about her injuries. Most importantly, there was no
contradictory evidence. Appellant presented three witnesses. Two of the
witnesses--his mother and his sister--were not present and did not know what
happened. Appellant also called Kelse, whose testimony supported that of her
mother. Overall, the State's case was strong.

 The final step of the analysis requires us to determine, in light of the foregoing
examination, whether the error was harmless beyond a reasonable doubt. Chapman
v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 828 (1967). Focusing on Edith's
testimony, and assuming that the jury had been told that she had made a prior
inconsistent statement regarding Kelse's paternity, we conclude beyond a reasonable
doubt that the denial of the appellant's right to cross-examination Edith about the
prior inconsistent statement was harmless. See Chapman, 386 U.S. at 24, 87 S. Ct.
at 828 (acknowledging that "some constitutional errors which in the setting of a
particular case are so unimportant and insignificant that they may, consistent with the
Federal Constitution, be deemed harmless" and holding that "before a federal
constitutional error can be held harmless, the court must be able to declare a belief
that it was harmless beyond a reasonable doubt").

B. Fraudulent Insurance Application
 During cross-examination of Edith, she testified that she had been employed
by a pharmacy, but that she had been terminated. The following exchange then took
place:

 [Defense counsel]: Did you have insurance with Walgreen's?


 [Edith]: Yes, I did.


 [Defense counsel]: On your insurance application-- 


 [Prosecutor]: Your Honor, I object to the relevance of insurance and
whether or not she had insurance.


 [Defense counsel]: She already answered the question, Judge.


 [Trial court]: Well, y'all approach the bench.


 [Trial court]: What is the relevance?


 [Defense counsel]: I'd like to ascertain-- actually, she may have lied on
the insurance--it's to test her character for truthfulness.


 [Defense counsel]: Her character for truthfulness. She lied on the
insurance application.


 [Trial court]: Stating what?


 [Defense counsel]: Stating that her brother was--Merkle being her
brother, putting false names on the insurance.


 [Trial court]: I'll sustain the objection.


 We have already stated that, as a general rule, it is improper to impeach a
witness as to a collateral matter. Flannery v. State, 676 S.W.2d 369, 370 (Tex. Crim.
App. 1984). A matter is collateral if it could not be shown in evidence for any
purpose other than contradiction. Gutierrez v. State, 764 S.W.2d 796, 798 (Tex.
Crim. App. 1989). Whether Edith lied on her insurance application by stating that
appellant was her brother, rather than her husband, is a collateral matter because it has
no relevance to the case. And, unlike the prior inconsistent statement analysis above,
Edith did not testify about the insurance application on direct examination. 
Therefore, the exception to the prohibition against impeachment on collateral matters
is inapplicable here. See Hammett v. State, 713 S.W.2d 102, 105 (Tex. Crim. App.
1986).

 As such, the trial court did not err by refusing to allow appellant to impeach
Edith with the allegedly fraudulent insurance application.

 We overrule points of error two through five.

IV. ADMISSION OF EXTRANEOUS OFFENSE EVIDENCE

 In point of error six, appellant contends the trial court erred by admitting
evidence of an extraneous offense, specifically, evidence that appellant had
committed domestic violence on other occasions. During trial, the following
exchange took place:

 [Prosecutor]: Ms. Judge, how do you feel about testifying here today in
the courtroom?


 [Edith]: It has been something I've been battling with every day. Every
day I think about, you know, everything that happened, what I could
have done differently, you know, why did it have to go to this? I think
about, you know, okay am I going to ruin his future by continuing on
with this? Should I drop charges, et cetera? But then ultimately I come
to the decision that what's most important right now is our safety and for
me to make sure that this is documented. There was a time when an
officer told me, you know, well--there were other disturbances in our
household.


 [Defense counsel]: Objection, Your honor, it's hearsay again. It's
outside what has already been ruled on.


 [Trial court]: Overruled.


 [Edith]: An officer had came out on another call cand because he had
been to our home before, I had -- 


 [Defense counsel]: Judge, I will-- 


 [Trial court]: I will sustain the objection now.


 [Defense counsel]: Thank you.


 [Prosecutor]: I guess my question to you, Ms. Judge, is: Are you still
afraid today?


 [Edith]: Yes, I guess to some degree, I am.


 To preserve a complaint for appellate review, a defendant must raise the
complaint to the trial judge by a timely request, objection, or motion that specifically
states the grounds for the ruling sought. Wilson v. State, 71 S.W.3d 346, 349 (Tex.
Crim. App. 2002); Tex. R. App. P. 33.1(a)(1)(A). A defendant's appellate contention
must comport with the objection made at trial. Id. at 349. At trial, appellant objected
that the evidence was hearsay; however, on appeal, he argues that the evidence was
an inadmissible extraneous offense. Because his point of error does not comport with
his trial objection, appellant's point of error is waived. See Penry v. State, 903
S.W.2d 715, 753 (Tex. Crim. App. 1995).

 Additionally, appellant elicited the same evidence from Kelse when he asked
her whether she seen appellant father hit her mother on the night in question, and she
replied, "No, but I've seen him like hit her before." Error regarding improperly
admitted evidence is waived if that same evidence is introduced later by the defendant
and is not an effort to meet, rebut, destroy, deny or explain the improperly admitted
evidence. See Rogers v. State, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993).

 We overrule point of error six. 

V. CONCLUSION


 We affirm the trial court's judgment.




 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.


Do not publish. Tex. R. App. P. 47.2(b).
1. §§ 
2. 
 
 -