

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ALEX JORDAN CARRUTH, | § | No. 08-22-00240-CR |
| Appellant, | § | Appeal from the |
| v. | § | 109th Judicial District Court |
| THE STATE OF TEXAS, | § | of Andrews County, Texas |
| Appellee. | § | (TC# 8127) |

**MEMORANDUM OPINION**

A jury convicted Appellant Alex Jordan Carruth of aggravated robbery. Appellant challenges his conviction in four issues. For the following reasons, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual background

At the time of the offense, Marcus Mayes was a field technician for Magneto Services and Supply in Andrews, Texas. At approximately 7:00 p.m. on November 15, 2021, Mayes was sitting in his office at the Magneto shop and looking at the security cameras when he saw a man walk up to the shop's garage door. After Mayes grabbed a pipe and opened the door, the man came inside the shop with a .22-caliber rifle, pointed it at Mayes, and told him to get a welder Appellant was supposed to sell to Mayes. As Mayes walked toward the man, the man told Mayes, "If you take

another step, I'll shoot you, I'm not afraid," and fired the rifle twice—once at the ceiling and once at the concrete floor at Mayes's feet. The man took the welder and approximately $40 in cash then fled the scene. Security cameras at Magneto captured the robbery on video.

Although Mayes could not see the man's entire face because he was wearing a half-mask, Mayes identified the man as Appellant because of "[his] voice, the way he walks, and because [Mayes] had [previously] seen [Appellant's] jacket." Mayes iterated that Appellant had worked at Magneto as Mayes's apprentice for about two weeks immediately prior to the robbery and had been fired for not showing up to work. Mayes also knew Appellant because they attended high school together. Mayes recognized the rifle used in the robbery because Appellant had offered to sell it to Mayes several days prior, but Mayes declined because he was not allowed to own firearms as a convicted felon. Mayes also stated he had agreed to buy the welder that had been stolen, but he and Appellant engaged in a dispute about Mayes's payment for the welder. They also disagreed over Appellant's return of Magneto's property after he was fired. Mayes subsequently sent a series of text messages to Appellant about the robbery and recalled that their communications "[were not] friendly at all."[1]

After Appellant fled, Mayes called 911 to report the robbery. Sergeant Anthony Delacruz of the Andrews Police Department responded to Magneto and spoke to Mayes, who was "angry, upset, [and] shaken up" and told him that "Alex Carruth" had robbed him. After hearing Mayes's description of the robbery, Delacruz began processing the scene and found a fired .22-caliber casing and a live .22-caliber round in the garage. Delacruz watched the security camera footage of the incident and determined it was consistent with Mayes's account of the robbery. Other officers

---

[1] Because the contents of the text messages are the subject of an issue on appeal, we recount the messages in greater detail below.

reviewed surveillance footage from a nearby business and took statements from employees who stated they heard gunshots in the area that evening. Officers searched the area for Appellant but were unable to locate him.

After the officers collected the evidence and took it to the police station, investigator Tim Fulks, called Appellant's mother and told her they needed to speak with him about an incident involving a shooting. Appellant's mother told Fulks she would attempt to contact Appellant and tell him to speak to Fulks. At 9:27 p.m. (about half an hour after speaking with Appellant's mother), Fulks received a phone call from Appellant, who told Fulks he did not commit the robbery and he was with some friends at the time it had occurred. Appellant agreed to meet the officers at a local Allsup's convenience store. Delacruz, Fulks, and other officers went to the Allsup's and Appellant eventually arrived in the area on a bicycle. When the first officer to make contact with Appellant spoke to him, he identified himself as "Corey Allen Duran." Appellant was arrested pursuant to an arrest warrant.

Detective Chris Davis subsequently spoke to Appellant, who denied being involved in the robbery and was "steadfast" in his assertions that he was with his friends from 5:00 to 8:00 p.m. Davis had not yet told Appellant about the timeframe of the robbery. Appellant asked the officers, "Did y'all get my face," which also stood out to Davis because he had not yet told Appellant they were looking for a masked suspect. After Davis spoke to Appellant's friends about his alibi, Davis concluded that Appellant's alibi "did not match up."

### B. Procedural history

The State charged Appellant by indictment with one count of aggravated robbery. The indictment also included an enhancement paragraph alleging that Appellant had been finally convicted of the felony offense of burglary of a habitation. At trial, Appellant argued that Mayes,

3

who had "stole[n] money" from Appellant's paycheck, had fabricated the allegations against Appellant. In particular, Appellant argued that Mayes's testimony was biased because of "a lot of hatred" between the two men, as shown by Mayes's animosity toward Appellant's sexual orientation, his romantic involvement with a transgender person, and Mayes's use of discriminatory slurs against Appellant. Appellant also challenged the State's proof of his identity as the robber.

The jury found Appellant guilty of aggravated robbery. Appellant pleaded not true to the enhancement allegation. The jury found the enhancement allegation true and assessed punishment of 23 years' imprisonment. This appeal followed.

## II. ISSUES ON APPEAL

Appellant challenges his conviction in four issues, arguing that the trial court erred: (1) by excluding the text messages between Appellant and Mayes under TEX. R. EVID. 403 and the hearsay rules; (2) by prohibiting Appellant from presenting the messages to show Mayes's bias to testify under TEX. R. EVID. 613(b) and denying Appellant's right to confront Mayes with the messages under the Confrontation Clause; (3) by improperly commenting on the weight of the evidence during the guilt-innocence portion of trial; and (4) by allowing the State to improperly comment on Appellant's right not to testify at trial under the Fifth Amendment during the punishment phase of trial.

## III. EXCLUSION OF TEXT MESSAGES

In his first issue, Appellant argues that the trial court abused its discretion by excluding a series of text messages between Appellant and Mayes following the robbery. He posits that the messages fell under the "[e]xcited [u]tterance" exception to the hearsay rule and that the probative

4

value of the messages were not substantially outweighed by the risk of unfair prejudice. *See* TEX. R. EVID. 403, 803(2).

### A. Factual background

On cross-examination, defense counsel asked Mayes if he had "bias" to testify because he had pending criminal charges in the same county. Mayes agreed he had "every interest in the world to be here and be as cooperative as possible" but also acknowledged he could go to prison "if [his] testimony doesn't go well." Nevertheless, Mayes asserted there were "no benefits" promised by the State in exchange for his testimony. Defense counsel asked Mayes if he was familiar with Appellant's sexual preferences and whether he was dating "a transgender woman named Gia." Mayes responded that he was aware of those facts but that "[i]t has nothing to do with me." Mayes acknowledged that he called Appellant a "faggot" and "[t]ranny loving," but he stated that Appellant's sexuality did not make him uncomfortable or "bother [him]." The prosecutor did not object to defense counsel's questions.

Defense counsel next attempted to introduce into evidence a series of text messages between Appellant and Mayes, and the prosecutor objected on the bases of improper foundation and hearsay.[2] Defense counsel argued that he was not offering the messages for the truth of the

---

[2] In the subject messages, which were sent between 7:16 p.m. and 8:12 p.m., Mayes told Appellant, "[y]ou['re] fucked you fucking faggot," and Appellant responded, "[f]rom my check? Ya I know I been asking about it [for] days[.] When am I supposed to come by and get it." Mayes stated, "I'm gonna get your punk ass one way or another[. Y]our little son [is] gonna know his dad now hahahahahaha[.]" Appellant asked what Mayes was talking about and said that he "just want[ed] [his] money from [his] check" and to let him know when he could come get it. Mayes responded, "[h]ow about I meet you somewhere and see what you got without a gun pussy." Appellant replied, "[g]un? You can meet me wherever to talk about my check[.] I don't have guns I wish I did[.] You ready rn?" Mayes stated, "[y]ou['re] gonna regret it," and Appellant replied, "I don't think so[,] bring my money with you would yuh[.] You know[,] the money you stole from my check[.]" Mayes stated, "[b]ring my welder faggot," and Appellant replied, "[w]elder? What welder? The one I sold you and you haven't paid for? I forgot all about that[.]" Mayes stated, "[y]ou really should have shot me," and Appellant replied, "[w]hat are you talking about now? Shot you? I don't have guns and I been at relatives all day long[.]" Mayes stated, "[h]aha you['re] full of shit[,] my cameras got your chump ass[,] keep playing stupid man," and Appellant responded, "[w]hat cameras[,] where? I been over here all day. Did something happen? How was it me when I was here? Is my face on some camera you got? And doing what? You're talking nonsense[.] So do you have the money from my check or no? If no then text me when you do[,] ima need that[.]" Mayes stated,

5

matter asserted in the messages because "[i]t doesn't necessarily matter … if what is said in the text messages are true," but rather to establish when the messages were sent. The prosecutor responded that defense counsel would still be allowed to "get into the contents of the messages" if they were admitted and that if defense counsel was looking simply to introduce the timestamps, the contents of the messages could be redacted to avoid the hearsay issue. The prosecutor offered to stipulate to the fact that the text conversation occurred between Appellant and Mayes on November 15, 2021, at 7:16 p.m. to 8:12 p.m. The trial court excluded the messages because "the prejudicial value would outweigh the substantive value for what they are being offered" and because "there would be hearsay matters in there" but accepted the State's stipulation that the messages were sent at the times noted in the messages. While defense counsel did not object to the trial court's proposed plan, he announced his intent to make an offer of proof as to the text messages.

Defense counsel then proceeded to ask Mayes if he had threatened to come after Appellant and to separate Appellant and his son, and Mayes agreed that he had done so. Defense counsel also asked if Mayes was testifying "to make sure you mess up [Appellant's] life." Mayes disagreed and stated, "I'm here because of what he did to me." Mayes also admitted he had stolen money from Appellant's paycheck then clarified on redirect examination that he had "withheld" the money because Appellant did not work the full amount of hours he claimed he had. Mayes also denied that he fabricated the accusations against Appellant "because of his lifestyle. . . . [or] his relationship with Gia," Appellant's significant other.

---

"I won't pay you shit you pussy ass fudge packing tranny loving coward. You ain't shit without that gun[,] nothing but a scared little boy you. I'm gonna make sure you get fucked I got witnesses saying you walked in to the house saying you shot at me hahahaha." Appellant replied, "[w]hen? Where? And are they going to testify to that[?] I haven't even been home and did they witness this so called shooting?"

Appellant subsequently made an offer of proof regarding the messages. During the offer of proof, defense counsel argued that the prosecutor's hearsay objection should have been overruled because the messages had not been offered for the truth of the matter asserted, but rather to show that Appellant and Mayes "were talking around that time period and then that's how they talked to one another." Defense counsel also stated that the messages could have satisfied the statement-against-interest exception to the hearsay rule and they were not more prejudicial than probative.

## B. Standard of review and applicable law

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). The trial court does not abuse its discretion if the decision to admit or exclude the evidence is within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (en banc). "[A] reviewing court may affirm a trial court's decision if it is correct on any theory of law applicable to the case and supported by the record[.]" *See State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007).

## C. Excited utterance

Hearsay is a statement a declarant makes outside of his testimony at the current proceeding that a party offers into evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Appellant argues that the text messages were admissible under the "excited utterance" exception: "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." TEX. R. EVID. 803(2).

At trial, Appellant did not assert that the messages were admissible under the excited-utterance exception, but only that the messages were admissible because they were not being offered for the truth of the matter asserted in the messages and because the statement-against-

interest exception to the hearsay rule applied. *See* TEX. R. EVID. 801(d), 803(24). Since Appellant did not raise the excited-utterance exception in the trial court, he has not preserved this argument for our review. *See* TEX. R. APP. P. 33.1(a); *Compton v. State*, 666 S.W.3d 685, 714 (Tex. Crim. App. 2023) (recognizing that to preserve an argument on appeal, the argument must have been advanced in the trial court); *Willover v. State*, 70 S.W.3d 841, 845–46 (Tex. Crim. App. 2002) (the proponent of the evidence has the burden to specify which exception to the hearsay rule he is relying upon to have evidence admitted under a hearsay exception).[3]

### D. Rule 403

Appellant next argues that the trial court erroneously excluded the messages under TEX. R. EVID. 403. Rule 403 allows a trial court to exclude otherwise relevant evidence if its probative value is substantially outweighed by one or more of the following: "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403.

Assuming, without deciding, that the trial court abused its discretion by excluding the text messages, we conclude that any error in doing so would have been harmless. Unless the exclusion of the defendant's evidence "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense," such error is of a non-constitutional dimension, and we review the error under the harmless-error standard. *Popp v. State*, 634 S.W.3d 375, 395 (Tex. App.—El Paso 2021, pet. ref'd) (quoting *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002) (en banc)). Under the harmless-error standard, we disregard all non-

---

[3] Moreover, when Appellant offered the messages, he did not lay a foundation to establish that either he or Mayes was in an excited state under Rule 803(2) when the messages were sent. *See* TEX. R. EVID. 803(2). Thus, the trial court would not have abused its discretion by excluding the messages on this basis. And for the same reasons articulated below, any error in excluding the messages under Rule 803(2) would have been harmless.

constitutional "error, defect, irregularity, or variance that does not affect substantial rights" of the defendant. TEX. R. APP. P. 44.2(b). If we review the entire record and are convinced the error did not have a substantial or injurious effect or influence the jury's verdict, the error is harmless. *Barshaw v. State*, 342 S.W.3d 91, 93–94 (Tex. Crim. App. 2011).

Here, the messages at issue contained Mayes's accusations that Appellant committed the robbery. Mayes also stated that Appellant was a "fucking faggot" and a "pussy ass fudge packing tranny loving coward," that Appellant's "little son [was] gonna know his dad now." The trial court excluded the messages themselves, but as we recount in further detail below, Appellant was able to cross-examine Mayes on the substance of the messages, including Mayes's use of slurs against Appellant and the theory that Mayes was biased and had fabricated the robbery allegation because of a homophobic animus against Appellant. Thus, Appellant was not precluded from presenting a defense at trial, and we conclude that the harmless-error standard applies here. *See* TEX. R. APP. P. 44.2(b); *see also Popp*, 634 S.W.3d at 395.

After reviewing the entirety of the record, we are convinced that the exclusion of the evidence did not have a substantial and injurious effect or an improper influence on the jury's verdict. Again, Appellant was able to cross-examine Mayes on his use of slurs when speaking to Appellant, and Mayes admitted that he had used the particular language contained in the messages. And as stated above, Appellant was able to argue to the jury that Mayes fabricated the robbery allegations against Appellant because of Mayes's bias towards Appellant because of his sexual orientation and his romantic involvement with a transgender person, a theory we consider in light of the guilty verdict as impliedly rejected by the jury.

Moreover, circumstantial evidence unrelated to Mayes's purported bias supports Appellant's guilt for the robbery. Based on his statements to law enforcement, Appellant had

knowledge of the facts surrounding the robbery that would have been known only to a person who was involved in the event or investigation thereof. In particular, Appellant asked officers about whether they had seen his face (when the robber had concealed part of his face with a mask), and Appellant made an unprompted claim that he had been with his friends from 5:00 to 8:00 p.m. (the time frame within which the robbery took place). Moreover, Davis testified that Appellant's alibi was not credible (after speaking to the people Appellant was supposedly with at the time of the robbery). This evidence evinces Appellant's consciousness of guilt and suggests that he fabricated his alibi to avoid suspicion by law enforcement.

In sum, because (1) Mayes's testimony was cumulative of the contents of the messages, (2) Appellant was able to present his theory to the jury by cross-examining Appellant about the substance of the messages, and (3) other evidence in the record supports Appellant's guilt, we conclude that any error in excluding the messages under Rule 403 was harmless.

Accordingly, we overrule Appellant's first issue.

## IV. DENIAL OF CROSS-EXAMINATION

In his second issue, Appellant argues the trial court abused its discretion by not allowing defense counsel to impeach Mayes with the aforementioned text messages under TEX. R. EVID. 613(b), which also violated his right to confront witnesses under the Confrontation Clause.

### A. Standard of review and applicable law

We review the trial court's admission or exclusion of impeachment evidence pursuant to TEX. R. EVID. 613(b) under the same abuse-of-discretion standard set forth above. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009). Generally, a witness's credibility may not be impeached with specific instances of conduct except through certain criminal convictions. *See*

10

TEX. R. EVID. 608(b), 609. However, Rule 613(b) allows a witness to be impeached using extrinsic evidence to show bias or interest:

> In impeaching a witness by proof of circumstances or statements showing bias or interest on the part of such witness, and before further cross-examination concerning, or extrinsic evidence of, such bias or interest may be allowed, . . . the witness must be given an opportunity to explain or to deny such circumstances or statement. . . . If the witness unequivocally admits such bias or interest, extrinsic evidence of same shall not be admitted. A party shall be permitted to present evidence rebutting any evidence impeaching one of said party's witnesses on grounds of bias or interest.

*Billodeau*, 277 S.W.3d at 40 (citing TEX. R. EVID. 613(b)). Nevertheless, a defendant may be subjected to "reasonable restrictions" in his attempt to impeach a witness under Rule 613(b). *Id* at 43.

### B.   Any error under Rule 613(b) was harmless

Assuming, without deciding, that the trial court abused its discretion by refusing to allow cross-examination on this issue, we conclude that any resulting error would have been harmless. We review the trial court's erroneous exclusion of impeachment evidence offered through Rule 613(b) under the same harmless-error standard set forth above. *Id.*; *see* TEX. R. APP. P. 44.2(b).

Here, Appellant attempted to introduce the messages with Mayes to show Mayes's bias against Appellant based on an animus against Appellant for his sexual preferences and relationship with a transgender person. Prior to his attempt to admit the messages, Appellant was permitted to cross-examine Mayes regarding his statements to Appellant within the text messages:

| | |
|---|---|
| Defense counsel: | You know about [Appellant's] sexual preferences, right? |
| Mayes: | Yes. |
| Defense counsel: | You know that he's dating a woman [sic] dressed as a man [sic]? |
| Mayes: | Yes, sir. |

Defense counsel: Okay. He's dating a transgender woman named Gia?

Mayes: Yeah. It has nothing to do with me.

Defense counsel: Okay. There are times when you've referred to him in homophobic terms, right?

Mayes: Yeah.

Defense counsel: Calling him "faggot"—

Mayes: Uh-huh.

Defense counsel: —right?

Mayes: Yes, sir.

Defense counsel: "Tranny loving," stuff like that?

Mayes: Yes, sir.

Defense counsel: Okay. You're not comfortable with him being gay, are you?

Mayes: It don't bother me at all.

Defense counsel: It doesn't make you a little uncomfortable?

Mayes: No.

. . . .

Defense counsel: In some ways, it doesn't really set well with you that he's gay, does it?

Mayes: It don't bother me at all.

. . . .

Defense counsel: Mr. Mayes, you've threatened Alex plenty of times, right?

Mayes: Not that I recall.

Defense counsel: You've threatened to come after him and his son?

12

| | |
|---|---|
| Mayes: | After him, yeah. |
| Defense counsel: | Okay. So you did threaten him? |
| Mayes: | (Indicating affirmatively) |
| Defense counsel: | Is that a yes? |
| Mayes: | Yes, sir. |
| Defense counsel: | You threatened to separate him and his son for the rest of his life? |
| Mayes: | Oh, yeah. |
| Defense counsel: | Okay. And that's part of the reason why you're here today, is to make sure you mess up his life? |
| Mayes: | No. I'm here because of what he did to me. |

The trial court ultimately excluded the messages and later sustained the State's objection to defense counsel asking Mayes if he had called Appellant a "fucking faggot" and issued an instruction for the jury to disregard defense counsel's question.

Given the lack of other direct evidence establishing Appellant's identity as the robber, Mayes's testimony was important to establish Appellant's identity. While evidence of Mayes's bias could have undermined the State's case, defense counsel was nonetheless permitted to cross-examine Mayes on his purported bias to fabricate the robbery allegations due to his alleged animus against Appellant's sexuality and co-parenting with a transgender person. Although impeachment through the text messages may have been helpful to attack Mayes's credibility had he denied making the statements, Mayes admitted on cross-examination to referring to Appellant by the same slurs he used in the messages. As such, showing that Mayes had sent the messages by introducing the messages themselves would have been cumulative of his testimony that he had made the statements within the messages.

Because defense counsel was permitted to cross-examine Appellant on the substance of the messages and Appellant admitted to making the statements within the messages, there is little chance that impeachment of Mayes through the messages through Rule 613(b) would have aided Appellant in attacking Mayes's credibility or establishing his bias to testify. And as addressed above, other evidence in the record beyond Mayes's testimony supports Appellant's guilt and reduces the likelihood that Appellant was harmed by the purported error. Thus, we conclude that any error in denial of impeachment on this matter was harmless. *See Smith v. State*, 236 S.W.3d 282, 294–95 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (error in refusing to permit cross-examination of a witness was harmless under the more-stringent constitutional-harm standard in TEX. R. APP. P. 44.2(a) where, among other things, the excluded testimony was cumulative of other evidence, the defendant was otherwise permitted to cross-examine the witness, and other evidence established the defendant's guilt).

### C. Appellant's Confrontation Clause complaint is not preserved

Regarding Appellant's argument that the erroneous denial of impeachment violated the Confrontation Clause, we conclude that the issue is not preserved for our review. Appellate complaints regarding the Confrontation Clause are subject to the same error-preservation requirements set forth above, and a defendant's failure to specifically object to a trial court's admission or exclusion of evidence on the basis of the Confrontation Clause forfeits the claim on appeal. *See Ortiz v. State*, No. 08-15-00344-CR, 2017 WL 3667829, at *4 (Tex. App.—El Paso Aug. 25, 2017, pet. ref'd) (not designated for publication).

Although Appellant argued the messages were admissible because they did not constitute hearsay or violate Rule 403, he did not assert the Confrontation Clause as a basis for which the messages should have been admitted. Because Appellant's argument on appeal does not comport

14

with his arguments at trial, he has not preserved his Confrontation-Clause complaint for our review. *See* TEX. R. APP. P. 33.1(a); *Ortiz*, 2017 WL 3667829, at \*4 (defendant's objection that evidence constituted hearsay was insufficient to preserve his Confrontation-Clause complaint for appellate review).[4]

Accordingly, we overrule Appellant's second issue.

## V. TRIAL COURT'S COMMENT ON EVIDENCE

In his third issue, Appellant argues the trial court erred by commenting on the weight of the evidence.

### A. Factual background

During the defense's case-in-chief, Appellant recalled Mayes to testify. Defense counsel asked Mayes if he possessed a firearm during the robbery, and Mayes denied owning a firearm or possessing one when he was robbed. Defense counsel replayed the surveillance footage showing the robbery and pointed out what appeared to be a firearm standing behind Mayes. Mayes stated it was a "BB gun" that he was permitted to own as a convicted felon. When defense counsel stated it appeared to be a real firearm, the prosecutor objected that "[t]he evidence speaks for itself," and the trial court sustained the objection. Defense counsel continued to question Mayes about the scope on the weapon, and the prosecutor objected that the question was irrelevant because Mayes was not being tried for possession of a firearm. Defense counsel replied that the question went to Mayes's credibility and truthfulness. The trial court sustained the prosecutor's objection and

---

[4] Even if Appellant had preserved his Confrontation-Clause complaint, we would find beyond a reasonable doubt that any error in excluding the messages would not have contributed to Appellant's conviction or punishment for the same reasons above. *See* TEX. R. APP. P. 44.2(a); *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010) (violations of the Confrontation Clause are reviewed for constitutional harm under Rule 44.2(a)); *see also Smith v. State*, 236 S.W.3d 282, 294–95 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

stated, "It would be up to the jury to decide if it's a scope or not based on the picture. . . . Not your opinion which you [i.e., defense counsel] just tried to put into evidence."

Defense counsel continued to question Mayes about the weapon and asked why he had not used it during the robbery to defend himself, and the prosecutor objected again on the bases of relevance and Rule 403. After defense counsel responded that the testimony would be admissible to show that Mayes could have defended himself, the trial court stated, "Well, you've already established through the witness that it's a BB gun; and they can determine whether or not a BB gun would be a great defense. But it didn't appear during any of the other video[s] that there was a BB gun anywhere near or around, and it had nothing to do with whether or not he was [being] robbed." Defense counsel then continued questioning Mayes regarding other matters.

## B. Standard of review and applicable law

Although Appellant does not articulate a particular standard by which to review the trial court's statements, we construe his argument to mean that the trial court violated Article 38.05 of the Texas Code of Criminal Procedure. That statute provides:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

TEX. CODE CRIM. PROC. ANN. art. 38.05; *see also Proenza v. State*, 541 S.W.3d 786, 801 (Tex. Crim. App. 2017) (Article 38.05 provides the defendant with "the right to be tried in a proceeding devoid of improper judicial commentary[.]").[5] Whether the trial court is ruling on the admissibility

---

[5] Appellant argues that he can raise this claim for the first time on appeal despite the lack of an objection at trial. A complaint under Article 38.05 is not a *Marin* category-three forfeitable right that is subject to the usual error-preservation rules associated with that class of rights, but is instead a *Marin* category-two, waivable-only right that can be raised for the first time on appeal without an objection in the trial court. *Proenza v. State*, 541 S.W.3d 786, 801 (Tex. Crim. App. 2017); *see Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993) (en banc), *overruled on*

16

of evidence or speaking in another context, we have construed Article 38.05 to mean that a trial court should not make a comment "that (1) implies approval of the State's argument, (2) that indicates any disbelief in the defense's position, or (3) that diminishes the credibility of the defense's approach to its case." *See Urrutia v. State*, No. 08-18-00035-CR, 2019 WL 6271269, at *10 (Tex. App.—El Paso Nov. 25, 2019, pet. ref'd) (not designated for publication).

### C. The trial court's statements improperly commented on the weight of the evidence

Appellant argues that the following statement by the trial court improperly commented on the weight of the evidence when he said: "[w]ell, you've already established through the witness that it's a BB gun; and they can determine whether or not a BB gun would be a great defense. But it didn't appear during any of the other video[s] that there was a BB gun anywhere near or around, and it had nothing to do with whether or not he was [being] robbed."

Although the trial court iterated that the jury could decide the merits of the presence or absence of a BB gun in the garage as it related to the robbery, the trial court's latter statement that the BB gun did not appear in the videos and had "nothing to do with" the robbery indicated the trial court's skepticism about the defense's position and undermined the credibility of the defense's theory on the matter. Article 38.05 specifically provides that the trial court "'shall simply decide whether [the evidence] is admissible' without further comment." *See Moore v. State*, 624 S.W.3d 676, 681 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) (quoting Tex. Code Crim. Proc. Ann. 38.05). Because the trial court did not limit its comments to ruling on the objection and instead inserted its own views of the evidence and its meaning to the defense's case, we conclude that the comments were improper under Article 38.05. *See id.* (trial court's comments

---

*other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997) (en banc)). Thus, although defense counsel did not object to the trial court's comments, we will address Appellant's claim here.

about the validity of the defense's cross-examination of a witness were improper under Article 38.05 because they indicated the court's disbelief in the defense's position).

### D. The Article-38.05 violation was harmless

We next determine whether the trial court's improper comments were harmful. We review an Article-38.05 violation under the same harmless-error standard set forth above. *See* TEX. R. APP. P. 44.2(b); *Proenza*, 541 S.W.3d at 801–02. Although whether Mayes's testimony regarding the presence or absence of a BB gun was corroborated by the video footage could have had an impact on his credibility, such an effect would have been minimal because Mayes did not deny the presence of the BB gun in the garage. Further, the presence or absence of a BB gun during the robbery and whether Mayes could have or should have used the weapon to defend himself had little bearing on Appellant's identity as the robber or Mayes's bias to testify—Appellant's primary defensive theories.

Because the trial court's comments did not concern a central issue in the case (such as Appellant's identity), we are convinced that the improper comments did not have a substantial or injurious effect or an influence on the verdict. For these reasons, we conclude that the error was harmless—it did not affect Appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b); *see also Proenza*, 541 S.W.3d at 800 (improper comments under Article 38.05 that are "errorless or insignificant in the context of a particular trial" can be "declared harmless" on appellate review); *Urrutia*, 2019 WL 6271269, at \*11 (any error under Article 38.05 was harmless because the trial court's comment regarded a "peripheral issue" in the case).

Accordingly, we overrule Appellant's third issue.

## VI.  IMPROPER JURY ARGUMENT

In his fourth issue, Appellant argues the trial court abused its discretion by overruling his objection to the prosecutor's arguments that purportedly commented on his failure to testify.

### A.  Factual background

During the punishment phase of trial, defense counsel argued for a lower sentence for Appellant because he was a "humble, loving family man" and a "humble person." The prosecutor subsequently made the following argument:

> And that's the reason why you give him a big number. Because the one thing out of all these things that you don't hear at any point ever is "I made a mistake, and I'm sorry." [] He never takes accountability for any of it; and somebody that can't admit they did a wrong thing never stops doing wrong things.

Defense counsel objected that the prosecutor was "attacking [Appellant's] right to remain silent at all portions of all trials," and the trial court overruled the objection. Referring to Appellant's prior conviction for burglary of a habitation (to which Appellant pleaded not true), the prosecutor went on to argue, without objection, that Appellant "couldn't even admit that he pled to the thing that he came to court and pled to previously, which is his right. But he still couldn't do it. How do you give somebody who can't acknowledge that another break, the low, the minimum?"

### B.  Standard of review and applicable law

We review a trial court's ruling to an objection to a jury argument under the abuse-of-discretion standard set forth above. *Lujan v. State*, No. 08-22-00166-CR, 2023 WL 3510426, at *6 (Tex. App.—El Paso May 17, 2023, no pet.) (not designated for publication). "Proper jury argument generally falls within one of four areas: (1) summations of the evidence; (2) reasonable deductions from the evidence; (3) answers to argument of opposing counsel; and (4) pleas for law enforcement." *Id.* (citing *Davis v. State*, 329 S.W.3d 798, 821 (Tex. Crim. App. 2010)). We review

the jury argument in the context in which it appears. *Id.* (citing *Jackson v. State*, 17 S.W.3d 664, 675 (Tex. Crim. App. 2000)).

Generally, a prosecutor's comment on a defendant's failure to testify "violates both the state and federal constitutions as well as Texas statutory law," and a defendant's right to not testify extends to both the guilt-innocence and punishment phases of trial. *Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011). In determining whether an argument was improper, we must view the prosecutor's argument from the jury's standpoint and resolve any ambiguities in the language in favor of it being a permissible argument. *Id.* If the prosecutor's language could be construed as "merely an implied or indirect allusion" to the defendant's failure to testify, no violation has occurred. *Id.*; *see Bradley v. State*, No. 08-15-00035-CR, 2018 WL 1325154, at *3 (Tex. App.—El Paso Mar. 15, 2018, no pet.) (not designated for publication) (to constitute an improper comment on the defendant's failure to testify, "the words spoken must be a clear reference to the defendant's failure to testify."). "The test, then, is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Randolph*, 353 S.W.3d at 891. "In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character." *Id.*

### C. Analysis

#### (1) The prosecutor's first argument did not comment on Appellant's failure to testify

Regarding the first complained-of argument, defense counsel asserted that Appellant was entitled to a lighter sentence because he was a "humble" and "loving" person. Thus, the prosecutor's argument that Appellant had failed to express remorse and had denied responsibility

20

for the offense was a response to opposing counsel's argument that Appellant had a good moral character, a proper area of jury argument. *See Lujan*, 2023 WL 3510426, at *6. Moreover, the evidence at trial showed that prior to and after his arrest, Appellant had steadfastly denied responsibility for the robbery when speaking to law enforcement, had given a fictitious name when an officer initially stopped him, and had attempted to promulgate an alibi when speaking to investigators about his purported lack of involvement in the robbery. The prosecutor stating "you don't hear at any point ever" Appellant taking accountability or apologizing for his actions was not an actual comment on Appellant's failure to testify, but rather a permissible assessment of the summation of the evidence and reasonable deduction therefrom. *See Hoover v. State*, No. 10-19-00048-CR, 2021 WL 4595805, at *6 (Tex. App.—Waco Oct. 6, 2021, no pet.) (mem. op., not designated for publication) (when examined in context, a prosecutor's argument referring to the defendant's reasons for lying to law enforcement was not an impermissible comment on his failure to testify, but rather was a permissible reference to evidence of his prior dishonest statements to law enforcement); *see also id.* (summations of the evidence and reasonable deductions from the evidence are proper areas of jury argument).

Because we must resolve any ambiguities in the language in favor of it being a permissible argument, we cannot say that the language used was "manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on [Appellant's] failure to testify." *See Randolph*, 353 S.W.3d at 891. We thus hold that the trial court did not abuse its discretion by overruling the objection to the prosecutor's argument.

### (2) Appellant did not preserve his complaint regarding the prosecutor's subsequent argument

Regarding the argument that the prosecutor's remark about Appellant pleading not true to the enhancement allegation in the indictment, Appellant did not object to this specific argument. Because claims of improper jury argument are subject to the same error-preservation rules set forth above and Appellant did not make an additional objection to this particular argument, we conclude that this part of his claim is not preserved for review. *See* TEX. R. APP. P. 33.1(a); *see also Bell v. State*, 566 S.W.3d 398, 404–05 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("To preserve error regarding an improper argument, a party must object each time an allegedly improper argument is made."); *Johnson v. State*, 416 S.W.3d 602, 617 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (defendant failed to preserve improper-argument claim because he failed to object each time the prosecutor made the argument).

Accordingly, we overrule Appellant's fourth issue.

## VII. CONCLUSION

We affirm the judgment supporting Appellant's conviction.

LISA J. SOTO, Justice

July 21, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

(Do Not Publish)